ATTORNEYS FOR APPELLANT
Steve Carter
Attorney General of Indiana

Cynthia Ploughe
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
David L. Joley
Fort Wayne, IN



In the

# Indiana Supreme Court

No.  02S03-0804-CR-191

STATE OF INDIANA.,                                          *Appellant,*

v.

RAYMOND WASHINGTON, JR.,                          *Appellee*.

Appeal from the Allen Superior Court, No. 02D04-0607-CM-5058
The Honorable Robert E. Ross, Magistrate

On Transfer from the Indiana Court of Appeals, No. 02A03-0703-CR-124

**December 31, 2008**

**Dickson, Justice.**

Pursuant to statutory authority,[1] the State appeals from the trial court order granting the defendant's motion to suppress evidence in a criminal case charging the defendant with posses- sion of marijuana.  Upon the granting of the defendant's motion to suppress, the State dismissed the charges and brought this appeal.  The Court of Appeals affirmed the trial court in a published

---

[1] Ind. Code § 35-38-4-2(5) provides that the State may appeal from an order granting a motion to suppress evidence "if the ultimate effect of the order is to preclude further prosecution."

opinion. <u>State v. Washington</u>, 875 N.E.2d 278 (Ind. Ct. App. 2007). We granted transfer and now reverse the trial court.

The sole issue before this Court is whether, under both the Fourth Amendment to the U.S. Constitution and Article 1, § 11 of the Indiana Constitution, an officer, without reasonable suspicion, can inquire as to possible further criminal activity, in this case drug possession, when a motorist is stopped for a traffic infraction.

The facts of this case are not in dispute. While driving a moped, the defendant was stopped by a police officer for repeatedly driving left of center and because the officer suspected that the defendant was under eighteen and not wearing goggles or a helmet as required by statute. Indiana Code § 9-21-11-13 provides that:

> A person less than eighteen (18) years of age who operates or rides a motorized bicycle on a street or highway shall do the following:
> (1) Wear protective headgear…[.]
> (2) Wear protective glasses, goggles, or a transparent face shield.

However, upon stopping the defendant, the officer ascertained that the defendant was over eighteen years of age, thus making the requirement for headgear and goggles inapplicable to the defendant. Because the defendant appeared nervous, the officer asked whether "he had any guns, drugs, or anything that may harm [him] on his person." Tr. at 7. The defendant responded that he "had a couple dime bags on him." *Id*. at 8. Understanding this reference to mean bags of marijuana, the officer then asked for permission to remove the bags from the defendant's pockets. The defendant consented, and the officer determined that the substance was indeed marijuana.

The defendant's motion to suppress claimed violations of both the United States and Indiana constitutions. The chronological case summary reflects that the trial court granted the motion. Appellant's App'x at 2. Neither party has provided us with a copy of the actual order granting the motion, and the record does indicate whether the trial court made findings of fact or conclusions of law. We presume that the trial court found in the defendant's favor on both state and federal constitutional grounds. The parties argue both issues on appeal.

2

In the appellate review of a trial court's motion to suppress, the reviewing court determines whether the record discloses "substantial evidence of probative value that supports the trial court's decision." State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006). We do not reweigh evidence. *Id.* The State, appealing from a negative judgment, must show that the trial court's ruling on the suppression motion was contrary to law. State v. Estep, 753 N.E.2d 22, 24-25 (Ind. Ct. App. 2001).

### 1. Federal Constitution Fourth Amendment

The State contends that the question asked by the officer was neither a search nor a seizure and thus did not violate the Fourth Amendment to the United States Constitution.[2] The State argues that the defendant had a choice as to whether to answer the officer's question or not, that the question did not extend the duration of the stop, that it was not unduly intrusive into the defendant's privacy, and that it was not unreasonable.

The defendant responds that the traffic stop constituted a seizure, that the officer's question was an improper interrogation lacking in reasonable, articulable suspicion of criminal activity, and that there was little risk to officer safety because the defendant was completely visible sitting on an open moped rather than inside an enclosed car.

From our review of United States Supreme Court jurisprudence, we conclude that the officer's conduct in this case does not violate the Fourth Amendment. During a lawful detention, police do not need a reasonable suspicion to ask questions of the detainee. In Muehler v. Mena, 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), the Court emphasized that it has "held repeatedly that mere police questioning does not constitute a seizure." 544 U.S. at 101, 125 S.Ct. at 1471, 161 L.Ed.2d at 308, *quoting* Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991). "Even when officers have no basis for suspecting a particular individual, they may generally ask questions of the individual[.]" *Id.*, *quoting* Bostick, 501 U.S. at 434-35, 111 S.Ct. at 2386, 115 L.Ed.2d at 398. An officer making a traffic stop can ask

---

[2]     The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

questions of a detained motorist, but the detainee is not obligated to respond, and "unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." Berkemer v. McCarty, 468 U.S. 420, 439-40, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984) (footnotes omitted).

Though Mueller provides guidance, it does not directly address whether police questions that are unrelated to the initial reason for a detention may constitute an unlawful seizure. This issue has been confronted, however, by several federal Circuit Courts of Appeals. Chief among these is the Seventh Circuit's en banc decision in United States v. Childs. In Childs, the court took the case to expressly decide "whether questioning during the course of lawful custody must be related to the reason for that custody." United States v. Childs, 277 F.3d 947, 949 (7th Cir. 2002) (en banc).

In Childs, an officer of the Peoria (Illinois) Police Department stopped a car that he had stopped three days earlier in response to a hit-and-run accident in which the driver, Childs, was arrested on an outstanding warrant and a drug charge. The car at the time of the first stop had a cracked windshield, and the officer had instructed Childs to repair it. At the time of the second stop, the windshield had not been repaired, and the car was stopped for this reason alone. Childs, out on bail, was the passenger this time, and the officer began speaking with him while his partner spoke with the driver. Childs was not wearing his seatbelt in violation of Illinois law, and, as a passenger in the stopped vehicle, was under the control and direction of the officer until the officers' safety could be secured. While one officer was running a license check on the driver, the officer previously familiar with Childs asked him a few questions:

> [F]irst why Childs had not fixed the windshield (Childs replied that it was not his car), second whether he was carrying any marijuana at this time (Childs said no), and third whether he would consent to a search (Childs agreed).

Id. During the search, the officer found crack cocaine, which led to prosecution for possession with intent to distribute, and finally to a sentence of five years imprisonment. The Seventh Circuit panel held the search to be an unconstitutional seizure of Childs, but the en banc court disagreed, instead holding that

4

[B]ecause questions are neither searches nor seizures, police need not demonstrate justification for each inquiry. Questions asked during detention may affect the reasonableness of that detention (which *is* a seizure) to the extent that they prolong custody, but questions that do not increase the length of detention (or that extend it by only a brief time) do not make the custody itself unreasonable or require suppression of evidence found as a result of the answers.

*Id*. at 949. In its rationale, the Seventh Circuit persuasively reasoned that, unlike restrictions placed upon officers who have made a stop based on reasonable suspicion, the Fourth Amendment does not require that a person seized with probable cause be released "at the earliest moment that step can be accomplished," and that "[q]uestions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention." *Id.* at 953-54. Most other circuits agree. *See* United States v. Olivera-Mendez, 484 F.3d 505, 511 (8th Cir. 2007) (holding that three brief questions relating to drug trafficking amongst other inquiries relating to a traffic stop did not constitute an unreasonable seizure); United States v. Alcaraz-Arellano, 441 F.3d 1252, 1259 (10th Cir. 2006) (holding that questioning a suspect while his license was being checked did not unreasonably delay the detention and was thus permissible); United States v. Burton, 334 F.3d 514, 518-19 (6th Cir. 2003) (holding that a handful of questions asked, including requesting a search of the defendant's vehicle, was not "unusually intrusive or that asking them made this traffic stop any more coercive than a typical traffic stop"); *but cf.* United States v. Pruitt, 174 F.3d 1215, 1220-21 (11th Cir. 1999) (holding that questioning incident to a traffic stop should only be directed to the purpose of the stop and that additional "fishing expedition" questions are impermissible and are a violation of Terry).

In the present case, a police officer observed the defendant driving a moped across the center line and conducted a traffic stop also to investigate the defendant's possible failure to wear required safety equipment. The officer's brief questioning as to whether the defendant had any weapons, drugs, or anything else that could harm the officer was not itself a search or seizure and thus was not prohibited by the Fourth Amendment. The defendant was not obligated to answer the questions, and his choice to do so and to disclose inculpatory information provided the basis for the officer's further request for permission to search the defendant's trouser pockets. The defendant's appellate brief does not argue that the officer's question constituted an excessive delay.

We conclude that the officer's question to the defendant did not violate the Fourth Amendment.

## 2. Indiana Constitution, Art. I, § 11

The State acknowledges that the Indiana Constitution's prohibition of unreasonable search and seizure, although almost identical in text to its federal counterpart, nevertheless requires a different analysis that focuses on the totality of the circumstances, but argues that under such test the officer's conduct here was completely reasonable. The defendant urges that Section 11 should be interpreted to preclude such police conduct because of the important value of individual privacy.

Notwithstanding the textual similarity of Article 1, §11 of the Indiana Constitution[3] to that of the federal Fourth Amendment, Section 11 is interpreted separately and independently from Fourth Amendment jurisprudence. Mitchell v. State, 745 N.E.2d 775, 786 (Ind. 2001). The purpose of this section is to protect those areas of life that Hoosiers consider private from unreasonable police activity. Quirk, 842 N.E.2d at 339-40. The Indiana Constitution may protect searches that the federal Constitution does not. State v. Moore, 796 N.E.2d 764, 767 (Ind. Ct. App. 2003). Section 11 should be applied to protect people from unreasonable search and seizure. Brown v. State, 653 N.E.2d 77, 79 (Ind. 1995). When police conduct is challenged as violating this section, the burden is on the State to show that the search was reasonable under the totality of the circumstances. *See*, *e.g.*, Quirk, 842 N.E.2d at 340; Bullington v. State, 802 N.E.2d 435, 438 (Ind. 2004). The determination of the reasonableness of a search and seizure under the Indiana Constitution turns "on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005).

---

[3] The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Ind. Const. art. 1, § 11.

Applying the Litchfield factors, we note that the defendant was observed repeatedly driving a moped across the center line and operating it without the safety goggles required of drivers less than eighteen years of age. These facts establish a reasonable basis for the officer's concern, suspicion, or knowledge that a traffic law violation may have occurred. In addition, the degree of police intrusion was slight. The officer merely asked the defendant a brief question, one that not only asked if he had drugs, but also if he had weapons or other items that may harm the officer. The defendant was under no obligation to answer that question, but his honest response indicating that he did indeed have marijuana in his pockets justified the officer's request for the defendant's consent to the officer's removal of the contraband. As to the needs of law enforcement, the officer's conduct in making the stop was appropriate to the enforcement of traffic laws and the statutory requirement for young moped drivers to wear protective goggles. And his question to the defendant was consistent with the officer's concern for his own safety and law enforcement's responsibilities to deter crime, to intercept criminal activity, and to apprehend its perpetrators.

Directing our attention to Baldwin v. Reagan, 715 N.E.2d 332 (Ind. 1999), and Clark v. State, 804 N.E.2d 196 (Ind. Ct. App. 2004), *trans. not sought*, the defendant argues that "[p]ermitting officers to ask unfettered questions of Indiana citizens without any indication of wrongdoing would be an erosion of the Indiana Constitution's legacy of protection of the individual." Appellee's Br. at 15. Both Baldwin and Clark involved application of the Indiana Seatbelt Enforcement Act, which includes a provision stating that "a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of" the seat belt law. Baldwin, 715 N.E.2d at 339 n.8.

Baldwin was not an appeal from a criminal conviction but rather from a declaratory judgment holding that the Seatbelt Enforcement Act violated Section 11. The parties challenging the statute claimed that it permitted law enforcement unbridled discretion to stop vehicles without probable cause, even where the officer had no reason to believe that the passengers were not wearing restraints. This Court reversed and upheld the statute after narrowly construing it to require "that when a stop to determine seat belt law compliance is made, the police are strictly prohibited from determining anything else, even if other law would permit." 715 N.E.2d at 339. In

7

addition to reaching this holding, the Court explained that, applying principles of Indiana constitutional law, "a police officer may not stop a motorist in Indiana for a possible seat belt violation unless that officer reasonably suspects that the driver or a passenger in the vehicle is not wearing a seat belt as required by law." *Id.* at 337. This language of <u>Baldwin</u> relates specifically to police conduct in a seatbelt enforcement traffic stop. But it does not generally prohibit police from making a brief inquiry following the conclusion of a traffic stop. <u>Baldwin</u> does not support the premise for which it is cited by the defendant.

In <u>Clark</u>, a police officer observed the defendant motorist to be driving without a seatbelt and then to put it on. The officer made a traffic stop, confirmed that the vehicle was registered, and issued a warning ticket. The officer then asked if the motorist had anything illegal in his car. After the motorist responded that he did not, the officer asked if he could "take a quick look" in the car. The motorist agreed, but noted that he was low on fuel, so the officer followed him to the gas station and there searched the car, finding marijuana in the glove box. The Court of Appeals, purporting to follow <u>Baldwin</u>, held that the officer was prohibited from seeking an additional consent to search "during and after the seatbelt stop, without independent, reasonable suspicion of another crime." <u>Clark</u>, 804 N.E.2d at 201. The court added, "[t]he search at issue therefore violated Article One, Section Eleven of the Indiana Constitution." *Id.* at 201-02. The result in <u>Clark</u> is consistent with the Seatbelt Enforcement Act's express restriction that "a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter." I.C. § 9-19-10-3 (repealed by P.L. 214-2007 § 10, effective July 1, 2007).[4] To the extent that <u>Clark</u> holds that Section 11 or our decision in <u>Baldwin</u> generally prohibit police from questioning motorists or seeking consent to search following a terminated traffic stop, it is incorrect.

Arguing that Section 11 applies to prohibit the officer's conduct in this case, the defendant cites our recent opinion in <u>Quirk</u>, 842 N.E.2d at 334. But the facts in the present case are distinguishable. In <u>Quirk</u>, a tractor-trailer driver, initially stopped and ticketed for driving with a faulty headlight, was told that he was free to go. The police then re-approached him and informed him that, while *he* was free to leave, "the truck would have to remain." *Id.* at 339. The

---

[4] The current similar provision can be found at I.C. § 9-19-10-3.1.

resulting additional detention lasted more than twenty minutes while the police obtained a drug-sniffing dog and used it to examine the exterior of the truck. This Court affirmed the trial court's suppression of the resulting evidence because, under the totality of the circumstances, the detention of the driver "beyond the period necessary to issue a warning ticket and the subsequent search of his truck was unreasonable within the meaning of Article 1, Section 11." *Id.* at 343. In Quirk, the issue was the reasonableness of the temporary seizure of the truck, not that of any police question put to the driver. Our holding in Quirk does not preclude the officer's inquiry of the defendant in the present case.

The officer's question whether the defendant held contraband on his person, notwithstanding the absence of reasonable suspicion, was not unreasonable under the totality of the circumstances and did not violate Article 1, Section 11, of the Indiana Constitution.

**Conclusion**

We reverse the trial court order granting the defendant's motion to suppress. This cause is remanded.

Shepard, C.J., and Sullivan, J., concur. Boehm, J., dissents with separate opinion. Rucker, J., dissents with separate opinion.

**Boehm, Justice, dissenting.**

I respectfully dissent. This stop was based on the officer's observing Washington cross the center line and also the officer's suspicion, based on Washington's appearance, that Washington had violated helmet requirements applicable to those under eighteen years of age who operate motorcycles. Because the officer observed crossing the center, he had probable cause that a traffic infraction had occurred. The majority appears to address the stop as a "Terry stop," i.e., a stop based on reasonable suspicion, not probable cause, and also cites authority that deals with questions to persons who have not been pulled over by exercise of authority. Although I ultimately agree that the Fourth Amendment does not prohibit brief questioning on unrelated subjects during a Terry stop, in my view encounters, Terry stops, and stops on probable cause are not interchangeable under the Fourth Amendment. I therefore do not concur in the majority's Fourth Amendment analysis.

The Indiana Constitution is the basis of my disagreement with the majority's disposition of this case. Questioning directed to processing a traffic violation and protecting officer safety is reasonable as to both Terry stops and stops based on probable cause. But I do not believe a person stopped for a traffic violation is rendered fair game for questions on unrelated subjects. Here the officer asked Washington whether he had any drugs, then asked for and received consent to search Washington's person.[1] Both questions were posed at a time when Washington reasonably believed he was not free to go on his way. For the reasons explained below I believe this procedure crossed the line imposed by the Indiana Constitution on traffic stops.

### I. Unrelated Questioning Under the Fourth Amendment

---

[1] Washington raises no claim based on the absence of a "Pirtle warning," i.e., an advisement of the right to counsel, required under the Indiana Constitution before obtaining consent to a search from a person in custody. See Sims v. State, 274 Ind. 495, 500, 413 N.E.2d 556, 559 (1980); Pirtle v. State, 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975). Unlike Jones v. State, 655 N.E.2d 49 (Ind. 1995), the officer here did not make clear to Washington that he was free to go on his way before making these requests, so Washington was still in custody when he consented to the search. Presumably for this reason, some officers end a traffic stop, thereby releasing the vehicle and its passengers from custody, and then pose questions directed to unrelated crimes, usually those involving controlled substances. See, e.g., Campos v. State, 885 N.E.2d 590, 595 (Ind. 2008) (officer told driver to "drive safe" and shook hands before asking whether anything illegal was in the car).

Federal authority is not entirely clear on the permissible scope of questioning under various degrees of detention. First, to the extent the majority opinion addresses investigation for potential underage helmetlessness, I believe its citation of United States v. Childs, 277 F.3d 947 (7th Cir. 2002), is misplaced. The Seventh Circuit en banc opinion in Childs expressly limited the scope of its discussion to arrests with probable cause and disclaimed addressing traffic stops based on the lesser standard of reasonable suspicion.[2] Second, I question the majority's reliance on Florida v. Bostick, 501 U.S. 429 (1991), and other cases permitting officers to ask questions of persons who have not been pulled over or otherwise arrested. As I see it, there is a fundamental difference between an officer's approaching a person on the street to ask questions, and an officer's pulling a vehicle over by exercise of law enforcement power. The person on the street may be inclined to submit to questioning, but would not perceive that he or she is required to comply. The driver of a vehicle that has been stopped by law enforcement would assume that compliance with authority is not optional. And that assumption would be correct, because a charge of resisting law enforcement backs up the officer's authority. See Ind. Code §§ 34-28-5-3.5 (2004) (failing to identify self to officer is a Class C misdemeanor), 35-44-3-3 (West Supp. 2008) (knowingly or intentionally using a vehicle to flee from a law enforcement officer who has ordered a stop is a Class D felony).

At one time the Fourth Amendment rule seemed fairly clear as to the scope of permissible questions in a Terry stop. United States v. Brignoni-Ponce, 422 U.S. 873 (U.S. 1975), dealt with a Terry stop based on reasonable suspicion but not probable cause. The Court expressed Justice Rucker's view that both scope and duration of questioning were limited by the subject giving rise to the stop. Specifically, the Court held that

---

[2] The Seventh Circuit explained:

> A person stopped on reasonable suspicion must be released as soon as the officers have assured themselves that no skullduggery is afoot. Probable cause, by contrast, justifies a custodial arrest and prosecution, and arrests are fundamentally different from Terry stops.
>
> . . . .
>
> The police had probable cause to believe that the car's driver, and Childs himself, had committed traffic offenses. That justified arrests, which make it unnecessary for us to decide whether and if so how the "scope" limitation for Terry stops differs from the "duration" limitation.

Childs, 277 F.3d at 952–53.

2

when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion. As in Terry, the stop and inquiry must be "reasonably related in scope to the justification for their initiation." The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.

Id. at 881–82. If these limits apply to a stop based on reasonable suspicion of an immigration violation, they certainly apply to a stop based on reasonable suspicion of the lesser offense of a traffic infraction and limit questioning to resolution of the reasonable suspicion justifying the stop.

I think, however, that Muehler v. Mena, 544 U.S. 93 (2005), has resolved this issue differently under the Fourth Amendment. Mena dealt with questioning of a person detained during a search of a residence conducted pursuant to a warrant based on probable cause of weapons and gang violations. The Court held that extended questioning regarding immigration status was not prohibited. Mena's basic holding was that the questioning did not violate the Fourth Amendment because it did not extend the detention and was not itself a search or seizure. The Mena majority, in footnote 3, expressly disavowed the view that Brignoni-Ponce created a "requirement of particularized suspicion for purposes of inquiry into citizenship status." I take this to mean that no independent reasonable suspicion is required to explore unrelated subjects if the stop itself is lawful. If applied to Terry stops, this footnote may be viewed as dicta, but it seems to me to be a cabining in of Brignoni-Ponce and to apply equally to Terry stops. I therefore agree with the courts that have taken Mena's reasoning to apply to questions asked during traffic stops and that have evaluated unrelated questions solely in terms of whether they significantly extended the duration of the stop.[3]

---

[3] United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007) (asking questions related to possible drug trafficking without reasonable suspicion did not extend the stop for speeding and was therefore reasonable); United States v. Mendez, 476 F.3d 1077, 1080–81 (9th Cir. 2007) (holding that unrelated questioning need not be supported by separate reasonable suspicion if it does not prolong the stop); United States v. Alcaraz-Arellano, 441 F.3d 1252, 1259 (10th Cir. 2006) (asking unrelated questions while writing a warning ticket did not unreasonably lengthen the stop); United States v. Hernandez, 418 F.3d 1206, 1209 n.3 (11th Cir. 2005) (noting that duration is the test of reasonableness, and while processing the driver's license and registration, the officer may "also ask questions—even questions not strictly related to the traffic stop"); United States v. Burton, 334 F.3d 514, 518–190 (6th Cir. 2003) (asking a few questions about illegal activity without reasonable suspicion is not unreasonable); United States v. Shabazz,

3

I freely concede that other courts have concluded that under the Fourth Amendment even a stop with probable cause is limited to the reason for the stop,[4] or is limited by some combination of scope and duration.[5] Because this is an issue of federal constitutional law, we are bound by our understanding of the Supreme Court's opinion, even if as some have suggested, permitting unrelated questioning without reasonable suspicion is "totally at odds with the <u>Terry</u> line of Supreme Court decisions on the limits applicable to temporary detentions." Wayne R. LaFave, 4 <u>Search & Seizure</u> § 9.3(d), at 391 (4th ed. 2004). In view of <u>Mena</u>, I agree with the majority that the Fourth Amendment does not bar brief questioning of a person subjected to a <u>Terry</u> stop.

## II. Unrelated Questioning Under the Indiana Constitution

Although I agree with the majority's conclusion that the Fourth Amendment does not restrict the scope of the officer's questioning of Washington, I would affirm the trial court's grant of Washington's motion to suppress because I believe continuing the seizure to explore unrelated subjects violated article I, section 11 of the Indiana Constitution.

As the majority notes, article I, section 11 of the Indiana Constitution protects citizens against unreasonable seizures, including unreasonable detentions for traffic violations. <u>State v. Quirk</u>, 842 N.E.2d 334, 343 (Ind. 2006). A traffic stop is not unreasonable if an officer has observed a traffic violation or reasonably suspects that the motorist is engaged in, or about to engage in, illegal activity. <u>Id.</u> at 340. In a stop based on either probable cause or reasonable suspicion, it is clear that an officer may request the driver's license and registration and may ask about weapons or other threats to officer safety. <u>Lockett v. State</u>, 747 N.E.2d 539, 543 (Ind. 2001). It

993 F.2d 431, 437–38 (5th Cir. 1993) (holding that unrelated questioning that occurs while officers are waiting for a computer check does not unreasonably extend the detention).

[4] <u>State v. Smith</u>, 184 P.3d 890, 902 (Kan. 2008) ("[W]e are not persuaded that <u>Mena</u> can be read as an alteration or abandonment of the rules regarding the limited scope of a <u>Terry</u> stop. . . . [W]e hold that the [Kansas] Court of Appeals erred in ruling that <u>Mena</u> allows law enforcement officers to expand the scope of a traffic stop to include a search not related to the purpose of the stop, even if a detainee has given permission for the search.").

[5] <u>United States v. Blair</u>, 524 F.3d 740, 752 (6th Cir. 2008) (holding that although asking for consent to search did not unreasonably extend the stop, calling canine unit to the scene without reasonable suspicion of other crimes "extended the scope and duration of the stop beyond that necessary to issue a citation for a tag-light violation" and the remainder of the stop violated the Fourth Amendment); <u>United States v. Henderson</u>, 463 F.3d 27, 46 (1st Cir. 2006) (when officer lacked reasonable suspicion regarding passenger and passenger would have been unable to drive the vehicle for driver with suspended license, asking for identification from passenger expanded the scope and prolonged the stop).

4

is also clear that an officer may undertake an investigation unrelated to the initial reason for the stop after developing reasonable suspicion of a second violation, for example where the officer smells alcohol on the breath of a driver stopped for speeding. Wilson v. State, 745 N.E.2d 789, 791 (Ind. 2001).

It is another matter, however, whether a stop grounded only on observation or reasonable suspicion of a traffic violation permits the officer to inquire into any form of illegal activity that strikes his fancy. Indiana statutes and the state and federal constitutions guarantee all citizens freedom from arrest for a chat about potential crimes without probable cause. Unlike the Fourth Amendment analysis, the reasonableness of a traffic stop under the Indiana Constitution turns on a balance of (1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs. Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005). The Indiana Constitution, by prohibiting stops without reasonable suspicion, resolves this balance in favor of the individual's privacy if there is no basis to interdict the individual's freedom of movement. I believe a citizen, innocent or not, who is pulled over based on a traffic infraction has the same privacy interest as anyone else, and law enforcement's need to engage that citizen in questioning on unrelated subjects is no greater as to that person than as to any other. As a result, the same constitutional balance requires limiting questioning to the offense justifying the stop.

The majority finds sufficient degree of suspicion of a violation because the officer had reason to believe that a traffic violation occurred. The officer's observation of a violation gave him reason to stop Washington, but no reasonable suspicion to extend the seizure to unrelated subjects. Reasonable suspicion of one offense does not justify relaxation of the basic guarantee that seizures be reasonable as to other unrelated possible offenses. To be sure, suspicion of an offense invokes the needs of law enforcement to pursue investigation of that offense. But as Justice Rucker puts it, once that investigation is complete, the officer's job is done. Moreover, an evaluation of the reasonableness of a search or seizure requires that interests of law enforcement be balanced against a concern for excessive discretion in selection of the persons to be investigated. Litchfield, 824 N.E.2d at 360. Because of the sheer number of traffic regulations, police can often generate probable cause or reasonable suspicion to detain a vehicle within a matter of

minutes. The ease of justifying a traffic stop gives police wide discretion over which vehicles to stop and raises the danger that this discretion may be used to engage in fishing expeditions as to targeted citizens. We noted this concern in Mitchell v. State, 745 N.E.2d 775, 787 (Ind. 2001), where we held that article I, section 11 of the Indiana Constitution does not prohibit police from conducting a justified traffic stop, even if the motive may be investigation of other criminal activity, but cautioned against "ensuing police investigatory conduct that may be excessive and unrelated to the traffic law violation." The majority is correct that the degree of intrusion incident to brief questioning may be short in duration. But unrelated questioning, even if only a single word, does intrude on the driver's privacy interest, and in a context where the driver's freedom has been curtailed, it goes too far.

I think the majority's reliance on the extent of law enforcement needs is misplaced. Without some indication of other offenses, the needs of law enforcement in processing a traffic offense are no greater than with respect to any citizen. And if criminal activity is truly afoot, we have accepted the officer's explanations for extended questioning. E.g., Myers v. State, 839 N.E.2d 1146, 1148–49, 1154 (Ind. 2005) (describing officer's observations of a strong cologne scent and the driver's shaking hands, nervousness, excited talking, and constricted pupils as "significant indicators" of contraband); Halsema v. State, 823 N.E.2d 668, 670–71 (Ind. 2005) (officer observed vehicle's occupants bending down and making furtive gestures, and noticed a case of beer in the back seat, the driver's bloodshot eyes, and odor of alcohol on the driver's breath).

In sum, I believe that the Indiana Constitution requires reasonable suspicion of a separate offense before an officer conducting a traffic stop may broaden the questioning to other subjects beyond those appropriate to process the traffic violation and protect officer safety. Arrests for more serious offenses typically do not afford such wide discretion as to whom to investigate. The extent to which those arrests justify more extensive questioning is a subject for another day.

**Rucker, Justice, dissenting**

For at least two reasons I disagree with the majority opinion. To begin, the majority's underlying thesis is that the officer's questioning "was not itself a search or seizure and thus not prohibited by the Fourth Amendment." Slip op. at 5. However, the point here is not whether questioning by a police officer during a traffic stop is a seizure. The law is settled that it is not. The United States Supreme Court has "held repeatedly that mere police questioning does not constitute a seizure." Muehler v. Mena, 544 U.S. 93, 101 (2005) (citations omitted). But the law is equally settled that a traffic stop is itself "a seizure subject to the constraints imposed by the Indiana and Federal Constitutions." Campos v. State, 885 N.E.2d 590, 597 (Ind. 2008). And this proposition is not particularly remarkable. See, e.g., Delaware v. Prouse, 440 U.S. 648, 653 (1979) ("stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief.") (citing United States v. Martinez-Fuerte, 428 U.S. 543, 556-58 (1976); United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)); see also Whren v. United States, 517 U.S. 806, 809-10 (1996) ("Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment].") (citations omitted).

The critical point raised in this case concerns the constraint the Fourth Amendment imposes on police officers who detain motorists while issuing traffic citations. The Fourth Amendment of course protects against unreasonable searches and seizures. And what is reasonable under the circumstances is fact sensitive.

In determining whether there has been a Fourth Amendment violation in the context of a traffic stop, a number of courts look to the scope of the detention as well as its duration.[1] This

---

[1] See, e.g., United States v. Blair, 524 F.3d 740, 752 (6th Cir. 2008) (examining both the "proper scope and duration of the stop" and declaring "Once the purpose of a traffic stop is completed, a police officer 'may not "further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." '") (citations omitted); United States v. Henderson, 463 F.3d 27, 45 (1st Cir. 2006) ("The scope and duration of a vehicle stop must be

view is expressed by Judge Cudahy in his concurring opinion in <u>United States v. Childs</u>, 277 F.3d 947 (7th Cir. 2002). Observing the "common-sense notion that reasonableness includes both a scope and a duration dimension," <u>Childs</u>, 277 F.3d at 956, Judge Cudahy noted:

> [V]irtually, all thoughtful, civilized persons not overly steeped to the point of confusion in the mysteries of ... Fourth Amendment jurisprudence" would agree that the scope of a search or seizure must be part of the reasonableness inquiry. For if a man were stopped for speeding in Utah, it would not be reasonable for a police officer to ask whether he were practicing polygamy. There would be nothing in the circumstances to suggest any basis for such an inquiry even if the duration of the stop was not lengthened. The question itself would be an invasion of privacy. This is a good illustration why the *duration* of a traffic stop cannot be the only dimension of reasonableness. The subject-matter (or scope) dimension provides limits that are just as binding as the time (or duration) dimension.

(citation omitted) (emphasis in original). <u>Id.</u> I agree and would endorse this more reasoned view. A police officer asking a stopped motorist about the presence of illegal substances, with no basis whatsoever to believe they are present, is patently unreasonable and thus inconsistent with the protections afforded by the Fourth Amendment.

Second, even if I were to accept for purposes of discussion that consideration of scope as well as duration of a traffic stop is analytically incorrect, I would still conclude the trial court correctly granted Washington's motion to suppress. The United States Supreme Court has not specifically addressed the question of whether police questions unrelated to the initial reason for a detention may constitute an unlawful seizure. It has held however, that "a seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." <u>Illinois v. Caballes</u>, 543 U.S. 405, 407 (2005). This point is amplified by those jurisdictions that have determined any

---

"'reasonably related [ ] to the circumstances that justified the [stop] in the first place'" unless the police have a basis for expanding their investigation.") (citations omitted); <u>United States v. Purcell</u>, 236 F.3d 1274, 1277 (11th Cir. 2001) ("[A]n officer's actions during a traffic stop must be 'reasonably related in *scope* to the circumstances which justified the interference in the first place.' Furthermore, the *duration* of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop.") (emphasis in original) (citations omitted); <u>United States v. Glover</u>, 957 F.2d 1004, 1011 (2d Cir. 1992) ("For an investigative stop based on reasonable suspicion to pass constitutional muster, the ensuing investigation must be reasonably related in scope and duration to the circumstances that justified the stop in the first instance, so as to be minimally intrusive of the individual's Fourth Amendment interests.").

questions posed by the police during a traffic stop are fair game provided they do not extend the length of the stop any longer than necessary to effect the purpose of the stop. See, e.g., United States v. Mendez, 476 F.3d 1077, 1080-81 (9th Cir. 2007) (holding that unrelated questioning is permissible so long as it does not extend the duration of the stop); United States v. Shabazz, 993 F.2d 431, 436 (5th Cir. 1993) (noting that additional questioning did nothing to extend the duration of the initial valid seizure, the court rejected "any notion that a police officer's questioning, even on a subject unrelated to the purpose of the stop, is itself a Fourth Amendment violation.").

Although the record in this case is not altogether clear concerning the timelines, what is clear is that after stopping Washington, the officer learned that "he was, in fact, over the age of eighteen." Tr. at 11. Even under "duration only" Fourth Amendment jurisprudence this should have ended any further inquiry. And this is so because the purpose of the traffic stop was completed. That is to say, Officer Hoffman stopped Washington because he believed Washington was under the age of eighteen and thus should have been, but was not, wearing protective headgear and goggles. Once the officer confirmed Washington's correct age, his job was done.[2] Since nervousness alone is not enough to constitute reasonable suspicion, Finger v. State, 799 N.E.2d 528, 534-35 (Ind. 2003), Officer Hoffman's additional questioning was unlawful because the initial seizure was "prolonged beyond the time reasonably required to complete [the confirmation] mission." Cabelles, 543 U.S. at 407.

For all of the reasons expressed I would affirm the judgment of the trial court.

---

[2] Although Officer Hoffman testified that he also stopped Washington because he was driving his moped erratically, Tr. at 17, the record is silent on whether the Officer gave Washington a traffic ticket for this infraction.

3