## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 14 2018, 9:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James D. Metzger
The Law Office of
James D. Metzger, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeremy E. Grimes,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 14, 2018<br><br>Court of Appeals Case No.<br>32A04-1709-CR-2001<br><br>Appeal from the Hendricks<br>Superior Court<br><br>The Honorable Rhett M. Stuard,<br>Judge<br><br>Trial Court Cause No.<br>32D02-1702-F2-1 |

**Baker, Judge.**

[1] Jeremy Grimes brings an interlocutory appeal following the trial court's denial of his motion to suppress evidence, contending that a police officer did not have reasonable suspicion when he conducted a traffic stop, thereby violating the federal and state constitutions and making the seizure of the contraband found in his vehicle unlawful. Finding that the stop was lawful under both the federal and state constitutions because the officer had reasonable suspicion, we affirm.

## Facts[1]

[2] At approximately 4:50 a.m. on February 2, 2017, Indiana State Police Officer Shawn Rawlins and a rookie officer in training were driving eastbound on I-70 between State Road 267 and Ronald Reagan Parkway. Officer Rawlins observed a vehicle traveling westbound on County Road 600 South, a public road that runs parallel to the highway. The vehicle appeared to be driving toward a cell phone tower. When Officer Rawlins saw the vehicle, he thought that "that vehicle should not be there at that time of the morning." Tr. Vol. II p. 8. He testified that "at that time of the morning . . . especially on that access road, there shouldn't be any passenger vehicles going down there." *Id.* at 29.

[3] Officer Rawlins exited the highway and proceeded to County Road 600 South to locate the vehicle. Officer Rawlins testified that he is "very familiar with the area." *Id.* at 12. This area is dark and isolated; Officer Rawlins could "just

---

[1] We heard oral argument at Indiana University East on April 17, 2018. We thank the school's administration, faculty, and students for their hospitality. We also thank counsel for their informative and engaging oral advocacy and subsequent discussion with the students.

slightly see the back side of" a distribution warehouse. *Id.* at 10. He testified that there is constant illegal dumping in that area; that he has found other vehicles parked in and around that area in which people were engaging in sexual interactions or illicit drug use; that several times he has observed the lock on the cell phone tower cut and that copper wire has been ripped out of a different nearby cell phone tower; and that there have been confirmed marijuana grows in the area.

[4] As the officer was driving on County Road 600 South, he checked the roads that intersect with it. As he came up to Bountiful Place, which is a public road with one residence on it, he could see a small dim light that he thought was possibly a vehicle's dome light. He directed his spotlight down Bountiful Place and saw a dark-colored sedan sitting partially on the roadway. The vehicle appeared to be the same one the officer had observed from the highway. Officer Rawlins believed that this vehicle "most likely did not belong to the one resident on Bountiful Place." *Id.* at 28. When the officer turned on his spotlight, the vehicle turned on its own lights and began moving forward. Officer Rawlins activated his emergency lights and the "vehicle stopped pretty much immediately." *Id.* at 14. He testified that the vehicle moved "five to ten feet. . . . [I]t basically rolled forward and stopped." *Id.* at 24. At the time, Officer Rawlins had not observed any traffic infractions.

[5] Officer Rawlins approached the driver's side of the vehicle, while the rookie officer approached the passenger side. Grimes was sitting in the driver's seat, and a woman was in the passenger's seat. When Grimes rolled down his

window, Officer Rawlins immediately smelled a strong odor of burnt marijuana. Officer Rawlins requested Grimes's driver's license and vehicle registration and asked what he was doing in the area. Both Grimes and the passenger appeared to be nervous and shaking, but their body movements appeared to be somewhat lethargic. Grimes had difficulty getting his driver's license out of his wallet. Initially, he had difficulty explaining why they were in the area, but then he stated that they were out driving and talking and had gotten lost, and that they had pulled over to figure out how to get home. Officer Rawlins began explaining how they could return to the street they wanted to reach.

[6] Meanwhile, the rookie officer signaled to Officer Rawlins that drugs were in plain view in the vehicle. The two officers asked Grimes and the passenger to exit the vehicle, and the officers placed them in handcuffs. The officers found marijuana, cocaine, a scale, and a weapon inside the vehicle.

[7] On February 3, 2017, the State charged Grimes with one count of Level 2 felony dealing in cocaine, nine counts of Level 2 felony dealing in a controlled substance, one count of Level 4 felony dealing in a controlled substance, one count of Level 4 felony possession of cocaine, eight counts of Level 6 felony possession of a controlled substance, one count of Level 6 felony dealing in marijuana, one count of Class B misdemeanor possession of marijuana, and one count of Class C misdemeanor possession of paraphernalia. On June 19, 2017, Grimes moved to suppress the evidence. On July 5, 2017, a hearing on his motion took place, during which Officer Rawlins testified that he conducted

the traffic stop based on his familiarity with the area and past offenses that have occurred there. On July 7, 2017, the trial court denied Grimes's motion. On August 4, 2017, Grimes filed a motion to correct error, and on August 7, 2017, the trial court denied that motion. Grimes now brings this interlocutory appeal.

# Discussion and Decision

[8] Grimes argues that the traffic stop was not supported by reasonable suspicion in violation of the Fourth Amendment to the United States Constitution and of Article I, Section 11 of the Indiana Constitution.

# I. Fourth Amendment

[9] The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures, so that they may "be secure in their persons, houses, papers, and effects." A traffic stop is a "seizure" for purposes of the Fourth Amendment. *Clarke v. State*, 868 N.E.2d 1114, 1118 (Ind. 2007). A traffic stop and limited search is permissible where an officer has at least reasonable suspicion that a traffic law, or other law, has been violated. *Sanders v. State*, 989 N.E.2d 332, 335 (Ind. 2013). We make reasonable suspicion determinations by looking at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. *Armfield v. State*, 918 N.E.2d 316, 319 (Ind. 2009). In assessing the whole picture, we must examine the facts as known to the officer at the moment of the stop. *Clark v. State*, 994 N.E.2d 252, 264 (Ind.

2013).  We review findings of reasonable suspicion de novo.  *Id.*  This is necessarily a fact-sensitive inquiry.  *Id.*

[10]  Grimes argues that Officer Rawlins did not have the particularized and objective basis required for reasonable suspicion to justify the traffic stop.  But Officer Rawlins observed Grimes's vehicle at 4:50 a.m. in an isolated area that often does not have traffic and that is known for criminal activity.  Further, when Officer Rawlins observed the vehicle, he believed that it most likely did not belong to the sole resident on Bountiful Place.  Consequently, when Officer Rawlins saw the vehicle parked partially on the roadway at the early hour, it was objectively reasonable for an officer with his knowledge and familiarity with the area to suspect an occupant of the vehicle to be involved in unlawful activity.  And when Officer Rawlins illuminated the area, the vehicle began to move forward, giving Officer Rawlins more reason to be suspicious of its activity.  *See State v. Belcher*, 725 N.E.2d 92, 95 (Ind. Ct. App. 2000) (finding that police had reasonable suspicion to conduct stop of person walking at three a.m. in a high crime area who, upon seeing a police car, changed directions and did not look at the officers as they approached, and who ran away when an officer asked to speak with him).  Viewed in totality, the circumstances gave Officer Rawlins a particularized and objective basis on which to form reasonable suspicion.  The traffic stop, therefore, was lawful, and no violation of the federal constitution occurred.

## II. Article I, Section 11

Grimes also challenges the validity of the traffic stop under Article 1, Section 11 of the Indiana Constitution. This provision is "almost identical in text to its federal counterpart." *State v. Washington*, 898 N.E.2d 1200, 1205 (Ind. 2008). Nevertheless, Article I, Section 11 requires a separate and independent analysis as "the Indiana Constitution may protect searches that the federal Constitution does not." *Id.* at 1206. When police conduct is challenged as violating this section, the burden is on the State to show that the search or seizure was reasonable under the totality of the circumstances. *Id.* To determine the reasonableness of a search or seizure, we balance "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

Considering the totality of the circumstances, the traffic stop was reasonable. As to the first *Litchfield* factor, Officer Rawlins had a high degree of suspicion and concern that Grimes was involved in illegal activity because Grimes's vehicle was located in an isolated area known for illegal activity and because of the early hour. *See Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001) ("A police stop and brief detention of a motorist is reasonable and permitted under Section 11 if the officer reasonably suspects that the motorist is engaged in, or about to engage in, illegal activity."). As to the second factor, the degree of intrusion on Grimes was low. A brief stop of an automobile is a "relatively minor"

intrusion, *Litchfield*, 824 N.E.2d at 360, and here, any intrusion was at least initially helpful as Officer Rawlins began giving Grimes directions to a particular street. Finally, regarding the third factor, the extent of law enforcement needs was high. Law enforcement officers have a responsibility "to deter crime, to intercept criminal activity, and to apprehend its perpetrators." *State v. Washington*, 898 N.E.2d 1200, 1206 (Ind. 2008). Officer Rawlins was familiar with the area and knew of criminal activity that had taken place there, it was dark, and Grimes was parked partially on the roadway in the early morning hours—in other words, an ideal time and place for illegal activity. In sum, Officer Rawlins was not acting unreasonably when he stopped Grimes's vehicle, and no violation of Article 1, Section 11 occurred.

[13] The judgment of the trial court is affirmed.

Bailey, J., and May, J., concur.