## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 13 2018, 10:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

C. Michael Riley
Rensselaer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Andrew Her, <br> *Appellee-Defendant* | June 13, 2018 <br><br> Court of Appeals Case No. <br> 56A03-1712-CR-2895 <br><br> Appeal from the Newton Superior Court <br><br> The Honorable Daniel J. Molter, Judge <br><br> Trial Court Cause No. <br> 56D01-1702-F5-5 |

**Altice, Judge.**

**Case Summary**

Within ten minutes of a lawful traffic stop along I-65 in Newton County, a canine officer arrived on the scene and, shortly thereafter, the canine alerted on the vehicle driven by Andrew Her. Based on probable cause, the officers then searched the vehicle without a warrant and discovered nearly 150 pounds of marijuana. The State charged Her with Level 5 felony dealing in marijuana and Class B misdemeanor possession of marijuana. The State appeals following the trial court's grant of Her's motion to suppress evidence.

We reverse and remand.

## Facts & Procedural History

On February 13, 2017, Officer Brian Taylor of the Hobart Police Department was working a High Intensity Drug Trafficking Area (HIDTA) along southbound I-65 as part of a federal highway interdiction team in northwest Indiana. Officer Taylor initiated a traffic stop of a vehicle being driven by Her. The validity of the stop is not at issue in this case.

In full police uniform, Officer Taylor approached the passenger side of the stopped vehicle, explained the reason for the stop, indicated that he was going to write a warning for the traffic infraction, and asked Her for his driver's license, vehicle registration, and proof of insurance. Her indicated that he did not have his driver's license and that the car did not belong to him. He provided Officer Taylor with only a passport. Officer Taylor observed a small backpack on the front passenger seat, two large shipping boxes, and an old set of golf clubs on top of the boxes.

[5] Officer Taylor asked if Her would come sit in the patrol vehicle while Officer Taylor attempted to identify Her and locate a license for him. Her agreed. Officer Taylor engaged Her in casual conversation while using his computer. Her advised that he was from Minnesota, was driving his father's vehicle, and was driving to Florida to participate in a golf tournament and stay for a couple weeks. In an attempt to explain his missing driver's license, Her claimed that his wallet had been stolen over a week ago. Officer Taylor inquired as to how Her was going to make it in Florida for two weeks with "no ID, no wallet, no credit cards." *Transcript* at 15. Her responded that he had some cash and his wife could send him money via Western Union if needed.

[6] From his computer, Officer Taylor learned that the vehicle being driven by Her was registered in Arkansas to someone with the same last name, purportedly Her's father. Officer Taylor also discovered through Minnesota BMV records that Her's license was currently revoked. He inquired of Her, who responded that "he had recently had a DUI but he had an attorney for that case and was under the assumption that his license was valid." *Id.* at 10. Based on the revoked status of the license, Officer Taylor determined that he could not let Her drive away in the vehicle. He also called his partner Officer Kenneth Williams – a certified canine operator – to the scene. In the meantime, Officer Taylor asked Her for consent to search the vehicle. Her declined. Additionally, Officer Taylor told Her, "You can't drive that car, you're going to have to leave it here or we're going to have to tow it". *Id.* at 20.

Officer Williams arrived within ten minutes of the initial stop and Officer Taylor asked him to have his dog perform an open-air sniff around the vehicle. While Officer Taylor continued completing his enforcement with Her, the dog alerted to Her's vehicle. Officer Taylor then performed a search of the interior and trunk of the vehicle, discovering approximately 148 pounds of marijuana.

On February 15, 2017, the State charged Her with Level 5 felony dealing in marijuana and Class B misdemeanor possession of marijuana. Thereafter, Her filed a motion to suppress and supporting memorandum, arguing that the stop was unlawfully prolonged in order to conduct a dog sniff without reasonable suspicion.

At the conclusion of the suppression hearing on November 15, 2017, the trial court granted Her's motion to suppress evidence, but on a different ground. The trial court explained its ruling as follows:

> To me, you get a warrant unless there were exigent circumstances. Exigent circumstances went away the minute you found out he was driving while suspended. This car was not going anywhere. At that point, you can get a warrant…. I think despite your comments [defense counsel] about profiling, … it still comes down to he pulls the guy over for driving too close but a bunch of stuff doesn't add up. I'm saying that does get to reasonable suspicion at a certain point. I would be seeking a warrant and I think he would have gotten it too and not just because of goofy golf clubs or something like that. Nothing adds up. There's nothing wrong with his continuous investigation. But if he says[,]; "I can't let you do that," you get a warrant. You say[,] "Pal, you want sit [sic] here all afternoon while I get warrant, this car is not moving." But you get a warrant. You

> didn't do it. And I think the law is clear in favor of the
> Defendant on this.

*Id*. at 25.[1] This order had the ultimate effect of precluding further prosecution. Accordingly, the State appeals pursuant to Ind. Code § 35-38-4-2(5). Additional information will be provided below as needed.

## Discussion & Decision

[10] The State, appealing from a negative judgment, must show that the trial court's grant of Her's suppression motion was contrary to law. *State v. Washington*, 898 N.E.2d 1200, 1203 (Ind. 2008). On review, we determine whether the record discloses substantial evidence of probative value to support the trial court's determination. *Id.* While we resolve conflicting evidence in favor of the trial court's ruling, we will consider uncontroverted evidence favorable to the defendant. *State v. Morris*, 732 N.E.2d 224, 227 (Ind. Ct. App. 2000). We give deference to the trial court's determination of facts but review de novo its ultimate ruling regarding the constitutionality of a search or seizure. *Belvedere v. State*, 889 N.E.2d 286, 287 (Ind. 2008). Further, we will affirm if the ruling is sustainable on any legal theory supported by the record, even if the trial court did not use that theory. *Gonser v. State*, 843 N.E.2d 947, 949 (Ind. Ct. App. 2006).

---

[1] The prosecutor respectfully disagreed with the trial court, noting the automobile exception. The trial court, however, determined that Her's vehicle was not mobile under the circumstances.

[11] Here, the parties agree that the trial court based its suppression ruling on the wrong legal theory. The trial court's ruling disregards the well-established automobile exception to the warrant requirement, which allows a warrantless search where officers have probable cause to believe a mobile (i.e., operational) vehicle contains evidence of a crime. *See State v. Hobbs*, 933 N.E.2d 1281, 1285-86 (Ind. 2010). The exception applies regardless of whether a driver is behind the wheel or has ready access to the vehicle. *See id*. at 1286 ("the automobile exception does not require that there be an imminent possibility the vehicle may be driven away"); *see also Maryland v. Dyson*, 527 U.S. 465, 466 (1999) ("the 'automobile exception' has no separate exigency requirement"); *Meister v. State*, 933 N.E.2d 875, 880 (Ind. 2010) (applying automobile exception despite "the dearth of exigent circumstances" given defendant's arrest). The dog sniff provided probable cause that the vehicle contained illegal drugs, thus justifying the warrantless search of Her's vehicle. *See Hobbs*, 933 N.E.2d at 1286-87.

[12] The question remains. Was the initially-valid traffic stop impermissibly prolonged in order to conduct the dog sniff? On this point, the trial court found that it was not. We agree.

[13] Under the Fourth Amendment of the United States Constitution, as well as Article 1, § 11 of the Indiana Constitution, an exterior dog sniff of a vehicle is

not considered a search.[2] *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). A dog sniff will, however, result in an unlawful seizure if it lengthens the time reasonably required to handle the matter for which the traffic stop was made and the delay occurs without reasonable suspicion that the motorist is engaged in criminal activity. *Rodriguez v. U.S.*, 135 S.Ct. 1609, 1612 (2015); *Austin*, 997 N.E.2d at 1034. Thus, a seizure justified only by a police-observed traffic violation becomes unlawful if it is prolonged beyond the time reasonably required to issue a ticket for the violation. *Rodriguez*, 135 S.Ct. at 1612; *see also Curry v. State*, 90 N.E.3d 677, 684 (Ind. Ct. App. 2017) ("The critical question is not whether the sniff occurs before or after the officer issues a ticket, but whether conducting the sniff prolongs or adds time to the stop."), *trans. denied*.

[14] In addition to determining whether to issue a ticket, an officer's tasks during a traffic stop include ordinary inquiries such as checking the motorist's driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez*, 135 S.Ct. at 1615. Moreover, an officer may ask questions of the motorist that do not unreasonably delay the traffic stop, including asking to search the vehicle and inquiring about the motorist's travel plans. *See Washington*, 898

---

[2] In his motion to suppress, Her asserted both federal and state constitutional violations. His arguments below and on appeal, however, focus only on the Fourth Amendment and do not present a separate *Litchfield* analysis under the Indiana Constitution. *See Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005) (reasonableness of a search or seizure under our state constitution turns on a balance of three factors: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs"). Accordingly, we apply only the Fourth Amendment analysis here.

N.E.2d at 1205; *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006); *Curry*, 90 N.E.3d at 685-86.

[15] Here, Officer Taylor stopped Her along I-65 after observing him commit a traffic infraction. Officer Taylor explained the reason for the stop, indicated he was going to issue a warning, and asked Her for his license, registration, and proof of insurance. Her, however, did not have any of these in his possession and offered Officer Taylor only a passport, explaining that his wallet had been stolen. Additionally, Officer Taylor learned that Her was from Minnesota and driving a car registered in Arkansas that did not belong to him. When Her stated that he was taking a two-week trip to Florida for a golf tournament, Officer Taylor reasonably questioned how Her was planning to do so without a license, wallet, or credit cards. Officer Taylor was also suspicious given the "garbage golf clubs" he observed in Her's backseat and the lack of luggage, as Her had indicated the trunk was empty. *Transcript* at 15. To top it all off, Officer Taylor discovered that Her's Minnesota license was revoked, which Her implied was associated with a recent DUI.

[16] Under the circumstances, Officer Taylor determined about five minutes into the stop that Her could not be allowed to drive away with just a warning, and he requested Officer Williams to come to the scene. Officer Taylor also informed Her that he would not be allowed to drive the car and that it might have to be towed. Officer Taylor then continued with the purpose of the stop, which

involved determining whether to tow or impound the car and whether to arrest[3] or issue a citation or summons to Her. Meanwhile, Officer Williams arrived within ten minutes of the initial stop and walked his dog around the car. The dog alerted.

[17] We agree with the State that the dog sniff took place while Officer Taylor was still diligently addressing the traffic violation, which was necessarily extended due to the discovery of Her's revoked status. The dog sniff, which occurred within about ten minutes of the stop, did not prolong the stop. Moreover, we agree with the trial court that Officer Taylor had reasonable suspicion to justify detaining Her and continuing the investigation alongside the road.

[18] The trial court's granting of the motion to suppress evidence was contrary to law. Therefore, we reverse and remand for further proceedings.

[19] Reversed and remanded.

Najam, J. and Robb, J., concur.

---

[3] Her asserts that nothing in the record indicates that he could have been arrested. On the contrary, Officer Taylor knew that Her was driving with a revoked license and had information indicating that the revocation was likely the result of a DUI. *See* Ind. Code § 9-24-19-3(a) (Class A misdemeanor offense).