Samuel E. THAYER, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A01–0807–CR–346.

Court of Appeals of Indiana.

April 24, 2009.

Brian J. Johnson, Hostetter & Ohara, Brownsburg, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Samuel Thayer, Jr. appeals from the trial court's denial of his motion to suppress evidence police found after he was detained in the course of a traffic stop. He presents the following restated issue for our review: whether his right to be secure from unreasonable search and seizure as guaranteed by the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution was violated.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 4, 2007, at approximately 1:30 p.m., Morgan County Sheriff's Deputy Steve Hoffman was patrolling I–70 near Little Point, several miles southwest of Indianapolis, when he observed the driver of a late-model BMW tailgating a semi tractor-trailer in an eastbound lane. Deputy Hoffman initially drove up beside the BMW and tried to make eye contact with the driver in an effort to get him to stop tailgating, but when that informal effort failed, Deputy Hoffman initiated a traffic stop. The driver of the BMW, Thayer, pulled over, and Deputy Hoffman approached Thayer from the front passenger-side window of his car.[1]

Deputy Hoffman immediately observed that Thayer was sweating profusely, despite the air conditioning inside his car. Thayer also had a "quiver" in his voice, and his hand was "very shaky" as he handed Deputy Hoffman his driver's license and registration. Appellant's App. at 69. Thayer's driver's license listed Pennsylvania as his home state, and Deputy Hoffman inquired as to Thayer's travel plans that day. Thayer stated that "he'd made an early morning start and had traveled from his residence in Pennsylvania to Chicago on a lunch date with a friend." Id While Thayer was talking, Deputy Hoffman noticed on the front passenger seat a computer-generated map with a route from Pennsylvania to St. Louis highlighted on it. Deputy Hoffman then asked Thayer what part of Chicago he had been visiting, and Thayer admitted he had actually been visiting a friend outside of St. Louis. Deputy Hoffman also saw a piece of paper with the name of a hotel on it, and Deputy Hoffman asked Thayer whether he had

stayed at a hotel the night before. Thayer initially reiterated that he was just on a "day trip," but he then admitted that he had stayed overnight at a hotel in Effingham, Illinois. Id. at 70.

At that point, Deputy Hoffman asked Thayer whether he had anything to hide, such as an illegal weapon, which Thayer denied. Deputy Hoffman also asked Thayer whether he had taken any medication or illegal substance that might be the reason for his sweating and nervousness, and Thayer denied that as well. When Deputy Hoffman asked Thayer for permission to search his car for contraband, Thayer initially expressed some reluctance, but then Thayer agreed.[2] Deputy Hoffman instructed Thayer to exit the car, and Deputy Hoffman observed that Thayer was "soaked with sweat," and Thayer repeatedly put his hands in his pants pockets. Id. at 72. Deputy Hoffman observed that one of Thayer's pants pockets "looked like it was stuffed full of something." Id. at 73. During a pat-down search, Deputy Hoffman felt something like a handgun in Thayer's pocket. Thayer was moving around and "swiped" Deputy Hoffman's arm away. Id. at 74. Deputy Hoffman then drew his weapon, ordered Thayer to the ground, and handcuffed him. The item in Thayer's pocket was not a handgun, but a baggie later determined to contain 52.9 grams of cocaine.

The State charged Thayer with Dealing in Cocaine, as a Class A felony, and Possession of Cocaine, as a Class C felony. Thayer moved to suppress the evidence police obtained during the pat-down search of his person and the search of his car. The trial court denied that motion follow-

---

1. Deputy Hoffman used the passenger-side window as a safety measure, since the BMW was parked on the shoulder of I–70.

2. Deputy Hoffman told Thayer that it was Thayer's choice whether to permit the search.

ing a hearing. This interlocutory appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

While the determination of reasonable suspicion and probable cause requires de novo review on appeal, a trial court's determination of historical fact is entitled to deferential review. *Myers v. State*, 839 N.E.2d 1146, 1150 (Ind.2005). The court on appeal does not reweigh the evidence but considers the evidence most favorably to the trial court's ruling. *Id.* A trial court's factual findings will not be overturned unless clearly erroneous. *Id.*

### Fourth Amendment

■ Thayer contends that the scope of the traffic stop violated his rights under the Fourth Amendment to the United States Constitution, which provides, in pertinent part: "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV. The Fourth Amendment's protection against unreasonable searches and seizures has been extended to the States through the Fourteenth Amendment. *See Berry v. State*, 704 N.E.2d 462, 464–65 (Ind.1998). The Fourth Amendment prohibits unreasonable searches and seizures by the government, and its safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Moultry v. State*, 808 N.E.2d 168, 170 (Ind.Ct. App.2004). However, a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity "may be afoot." *Id.* at 170–71 (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■ A police officer may stop a vehicle when he observes a minor traffic violation. *Ransom v. State*, 741 N.E.2d 419, 421 (Ind.Ct.App.2000), *trans. denied.* Stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief. *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "Once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999), *cert. denied*, 528 U.S. 1176, 120 S.Ct. 1207, 145 L.Ed.2d 1110 (2000). "If the ... detention exceeds its proper investigative scope, the seized items must be excluded under the 'fruits of the poisonous tree doctrine.'" *Id.*

Here, at the suppression hearing, Deputy Hoffman testified that, during the traffic stop, Thayer was sweating profusely, shaky, stuttering, and nervous. In addition, "within just a short few minutes," Thayer had gone from telling Deputy Hoffman that he was on a day trip for lunch with a friend in Chicago to stating that he was on a day trip to St. Louis. Exhibit 1 at 4. Thayer also changed his story from not having stayed overnight anywhere to having stayed in a hotel in Effingham, Illinois the night before. In light of those circumstances, Deputy Hoffman grew suspicious of Thayer and became "concern[ed]" for his own safety. *Id.* at 5. Deputy Hoffman asked Thayer whether he had any illegal substances or weapons in the car, which Thayer denied.

When Deputy Hoffman asked Thayer about specific items that Thayer might have, he denied having any contraband. But when Deputy Hoffman asked Thayer specifically whether Thayer had any cocaine in the car, Thayer "actually giggled and kind of laughed under his breath, turned his head and looked [in] the opposite direction, and said, [']no, no, no, I don't have any cocaine in the vehicle.[']" *Id.* at 6.

Deputy Hoffman testified that he asked Thayer for permission to search his car. Thayer was reluctant and said, "I guess[,] if it's your job to search, then I'll let you." Appellant's App. at 71. Deputy Hoffman told Thayer that it was Thayer's choice and stated, "You can either let me search or you don't have to let me search. It's your right." *Id.* at 71–72. Thayer then responded, "Well, I'm not hiding anything, so I'll let you search." *Id.* at 72. As Thayer exited the car, Deputy Hoffman observed a bulge in Thayer's pants pocket and performed a pat-down search. When Thayer tried to prevent Deputy Hoffman from emptying the contents of the bulging pocket, Deputy Hoffman drew his weapon and ordered Thayer to the ground. At that point, Deputy Hoffman discovered a large bag of white powder, later determined to be cocaine, in Thayer's pocket.

. On appeal, Thayer contends that the circumstances of the traffic stop did not establish reasonable suspicion that criminal activity was afoot. That is, he maintains that Deputy Hoffman "unreasonably delayed the duration of the stop," and therefore unconstitutionally seized him, by asking Thayer questions unrelated to the purpose of the stop. Brief of Appellant at 22. And Thayer asserts that Deputy Hoffman's detention and questioning constituted a "fishing expedition." *Id.* at 23. We cannot agree.

 Reasonable suspicion, like probable cause, is a highly fact-sensitive inquiry. *Campos v. State,* 885 N.E.2d 590, 597 (Ind. 2008). Thayer is correct that nervousness, without more, is not enough to establish reasonable suspicion of a crime. *See State v. Quirk,* 842 N.E.2d 334, 341 (Ind.2006). But nervousness combined with deceptive responses to an officer's questions can generate reasonable suspicion of a crime. *See Finger v. State,* 799 N.E.2d 528, 534–35 (Ind.2003); see also Campos 885 N.E.2d at 597–98 (noting nervousness in combination with inconsistent stories by car's occupants could support a finding of reasonable suspicion).

Here, again, Thayer demonstrated extreme nervousness, and he lied to Deputy Hoffman about where he had been the night before and that morning. Thayer initially stated that he was on his way home from a lunch meeting in Chicago.[3] But Thayer quickly changed his story and admitted that he had visited a friend in St. Louis, not Chicago. And after reiterating that he had left home that morning and was only engaged in a "day trip," Thayer changed his story again and admitted to having stayed at a hotel in southern Illinois the night before. Finally, when Deputy Hoffman asked Thayer specifically whether he had any cocaine in the car, Thayer "giggled" and looked away from Deputy Hoffman.

Those facts, combined with Thayer's profuse sweating, shaking hand, and stuttering established reasonable suspicion

---

**3.** We note that it was 1:30 p.m. at the time of the stop, and Thayer was approximately 200 miles away from Chicago. Thus, his lunch date would have had to have concluded well before noon. Further, Thayer's location on I-70, several miles southwest of Indianapolis, was grossly inconsistent with the typical route of travel one would take from Chicago to Pennsylvania.

that criminal activity was afoot. Thus, Deputy Hoffman was justified in his brief detention of Thayer for further investigation into Thayer's inconsistent statements. And insofar as Thayer complains about either the seizure of his person or the search of his car after he gave Deputy Hoffman consent to search the car, Thayer cannot prevail. It is well established that consent is a valid exception to the requirements of the Fourth Amendment. *See Rush v. State*, 881 N.E.2d 46, 51 (Ind.Ct. App.2008). Thayer has not demonstrated that the seizure or search violated his rights under the Fourth Amendment.

### Article I, Section 11

In addition to claiming a violation of his rights under the United States Constitution, Thayer also asserts violation of Article I, Section 11 of the Indiana Constitution. Under this section, the State is required to show that, in the totality of the circumstances, the intrusion was reasonable. *Finger*, 799 N.E.2d at 535. The determination of the reasonableness of a search and seizure under the Indiana Constitution turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred; 2) the degree of intrusion the method of search or seizure imposes on the citizen's ordinary activities; and 3) the extent of law enforcement needs. *State v. Washington*, 898 N.E.2d 1200, 1206 (Ind.2008).

Here, Thayer was in clear violation of the law when Deputy Hoffman initiated the traffic stop, and Thayer does not challenge the basis for the stop, so the first element is satisfied. *See id.* And the degree of police intrusion was slight. In the course of the traffic stop, Deputy Hoffman was making conversation with Thayer when Thayer immediately displayed nervousness and began making inconsistent and deceptive statements, which justified Deputy Hoffman's continued detention of

Thayer. Finally, Deputy Hoffman's conduct in making the stop and detaining Thayer was "consistent with [Deputy Hoffman's] concern for his own safety and law enforcement's responsibilities to deter crime, to intercept criminal activity, and to apprehend its perpetrators." *See id.*

Each of Thayer's contentions on this issue relies on the assumption that Deputy Hoffman did not have reasonable suspicion to detain Thayer. But, for the reasons we have stated above, Deputy Hoffman did have reasonable suspicion that criminal activity was afoot and was justified in detaining Thayer for further investigation. *See Finger*, 799 N.E.2d at 535. The trial court did not abuse its discretion when it denied Thayer's motion to suppress.

Affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.