## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 17 2016, 8:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

C. Anthony Ashford
Ashford Law Group, P.C.
Chesterton, Indiana

Benjamen W. Murphy
Law Office of Ben Murphy
Griffith, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Carlos Barrientos,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 17, 2016

Court of Appeals Case No.
64A03-1508-CR-1128

Appeal from the Porter Superior Court.
The Honorable William E. Alexa, Judge.
Cause No. 64D02-1407-F2-5995

**Barteau, Senior Judge**

## Statement of the Case

[1]   A police officer stopped Carlos Barrientos while driving and, as a result of their encounter, found a controlled substance in Barrientos' car. In this interlocutory

appeal, Barrientos requests reversal of the trial court's denial of his motion to suppress evidence. We affirm.

## Issues

Barrientos raises four issues, which we consolidate and restate as:

> I.   Whether the trial court erred in rejecting Barrientos' claim that a police officer violated the Fourth Amendment to the United States Constitution by asking Barrientos to sit in a police car during a traffic stop and by searching Barrientos' vehicle.
>
> II.  Whether the trial court erred in rejecting Barrientos' claim that a police officer violated article I, section 11 of the Indiana Constitution by asking Barrientos to sit in a police car during a traffic stop and by searching Barrientos' vehicle.

## Facts and Procedural History

On July 8, 2014, Detective Alfred Villarreal of the Lake County Sheriff's Department was parked along Interstate 90 in Porter County. He was on patrol in an unmarked car. Detective Villarreal was approached by a man who identified himself as an agent of the United States Drug Enforcement Agency. The agent explained he was investigating a vehicle that might be transporting controlled substances in a hidden compartment. The agent told Detective Villarreal the make, model, and color of the vehicle and further stated it had a yellow temporary license plate issued by the State of Illinois.

Later, as Detective Villarreal was driving on Interstate 90, he saw a vehicle that matched the description the agent had given him. He followed the vehicle and

determined it was going eighty miles per hour, well over the speed limit of seventy miles per hour. The detective also saw the vehicle cross the highway's fog line. Detective Villarreal stopped the vehicle.

[5] Barrientos was driving the vehicle, and he was accompanied by his mother and his nephew. Detective Villarreal approached the vehicle on the passenger side. He told Barrientos that he had stopped him for speeding and asked for a driver's license and vehicle registration. Barrientos produced those documents.

[6] Next, Detective Villarreal asked Barrientos to get out of the vehicle and sit in his patrol car. Barrientos was wearing a t-shirt and shorts, and Detective Villarreal asked Barrientos to lift up his t-shirt to show that he did not have a weapon tucked into his shorts before allowing Barrientos to enter the patrol car. Barrientos complied.

[7] After they both sat down in the car, Detective Villarreal checked Barrientos' license on his computer to determine whether the license was valid and whether Barrientos had any arrest warrants. The detective also examined the vehicle registration. Detective Villarreal asked Barrientos where he was going, and Barrientos said he was going to South Bend to attend a child's birthday party. As they talked, Detective Villarreal noted that Barrientos was "fidgety" and his answers seemed to be "hesitant" or "questionable." Tr. p. 16. However, they also laughed together because the detective had mistakenly believed Barrientos' nephew was an adult due to being tall, and Barrientos explained his nephew

was only fifteen years old. Detective Villarreal did not find any irregularities in Barrientos' documents.

[8] Detective Villarreal walked back to Barrientos' vehicle to ask the passengers where they were going. Barrientos' mother said they were "just taking a ride and going to see a family member in general." *Id.* at 17.

[9] Next, Detective Villarreal returned to his car, where Barrientos was waiting. The detective sat down, returned Barrientos' driver's license and vehicle registration, and gave him a verbal warning for speeding. Detective Villarreal then told Barrientos he was "all set." *Id.* at 19. Barrientos appeared to be relieved and told the officer he would watch his speed. Next, the following exchange occurred, as described by Detective Villarreal:

> I asked him if he had anything illegal in the vehicle. I told him that we get a lot of weapons and drugs that come through here, and I asked him if he had anything illegal in his vehicle and he said no. I asked him if he had any weapons in the car; he said no. I asked him if he had any drugs in the car; he said no. And I asked him if he had any large amounts of U.S. currency; and he said no. I then asked him right after that if I could do a – my words were 'a quick search of his car.' And he said – I believe he said, 'Yes, no problem' or 'no problem.' And I reiterated, 'So I could search your car? I can search it?' And he said yes or yeah, one of the two.

*Id.* at 21.

[10] After Barrientos consented to the search, Detective Villarreal had Barrientos' mother and nephew go sit in the patrol car with Barrientos. The detective and two other officers who arrived at the scene searched Barrientos' vehicle and

found a hidden compartment in the dashboard. The officers opened the compartment and found a package of what appeared to be a controlled substance. Subsequent testing revealed that the officers had found 482.81 grams of heroin.

Meanwhile, Barrientos and his mother talked as they sat in Detective Villarreal's car, and a recorder captured their conversation. Barrientos admitted to his mother that he had a "drug" in the car. State's Ex. 2.

The State charged Barrientos with dealing in a narcotic drug, a Level 2 felony. Ind. Code § 35-48-4-1 (2014). Barrientos filed a motion to suppress. The trial court denied Barrientos' motion after an evidentiary hearing. Barrientos asked the trial court to certify its ruling for interlocutory appeal, and the trial court granted the request. Next, Barrientos requested and received permission from this Court to pursue an interlocutory appeal.

# Discussion and Decision

## I. Standard of Review

We review the denial of a motion to suppress similar to other sufficiency matters. *Dora v. State*, 957 N.E.2d 1049, 1052 (Ind. Ct. App. 2011), *trans. denied*. We do not reweigh the evidence but instead consider conflicting evidence in the light most favorable to the trial court's ruling. *Id.* We also consider any uncontested evidence in favor of the defendant. *Id.*

Barrientos concedes Detective Villarreal acted lawfully by stopping him because he had been speeding. Barrientos instead contends that being placed in the detective's car and having his vehicle searched violated his federal and state constitutional protections against unreasonable search and seizure. We address the constitutional claims in turn.

## II. Fourth Amendment

The Fourth Amendment to the United States Constitution provides, in relevant part: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." The Fourth Amendment applies to the states through the Fourteenth Amendment. *Thayer v. State*, 904 N.E.2d 706, 709 (Ind. Ct. App. 2009).

The protections of the Fourth Amendment extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Id.* Stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention may be brief. *Id.* If the detention exceeds the investigative scope of the stop, then seized items may be excluded from evidence. *Id.*

Barrientos argues that Detective Villarreal exceeded the scope of the stop by asking him to sit in the patrol car. He cites *Wilson v. State*, 745 N.E.2d 789, 793 (Ind. 2001), for the proposition than an officer may not place a motorist in a

patrol vehicle during a traffic stop unless it is justified by particular circumstances in the case.

[18] Here, Detective Villarreal noted that the road where the stop occurred, Interstate 90, was dangerous because it was congested "on that particular day." Tr. p. 7. In addition, the section of the highway where the stop occurred had only two lanes. The patrol car was equipped with a dash camera, and its recording supports the detective's assertion of dangerousness, showing heavy traffic passing Barrientos' parked vehicle. Furthermore, Barrientos' vehicle had a temporary license plate issued by the State of Illinois. Detective Villarreal explained he frequently has difficulty obtaining accurate information from his computer about Illinois temporary plates and it is helpful to have the motorist in his car to assist him.

[19] Barrientos notes Detective Villarreal repeatedly testified during the suppression hearing that he always asks motorists to get into his patrol car during traffic stops because doing so allows him to access his car's computer more easily, limits his need to walk back and forth between his car and the motorist's vehicle, makes it easier for him to converse with the motorist, and allows him a better opportunity to spot potential criminal activity.

[20] A routine practice of requiring motorists to enter a patrol car during traffic stops does not appear to comply with our Supreme Court's holding in *Wilson*. Nevertheless, even where an officer has a general practice of requiring a motorist to get out of his or her car and sit in a patrol car during a traffic stop,

there may still be facts in a particular case that justify the officer's request. Under the specific circumstances in this case, Detective Villarreal was justified in asking Barrientos to sit in the patrol car to minimize the need for the detective to walk back and forth along the road during dangerously heavy traffic and to more easily address any issues arising from Barrientos' temporary license plate.

[21] Barrientos cites several cases in support of his claim, but they are distinguishable. *Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983), did not involve a traffic stop but rather a citizen's encounter with the police in an airport terminal. In *Lucas v. State*, 15 N.E.3d 96, 104 (Ind. Ct. App. 2014), *trans. denied*, a panel of this Court concluded a police officer violated the Fourth Amendment by having the motorist get into his patrol car because the record was devoid of any particularized circumstances to justify the officer's request. By contrast, in the current case Detective Villarreal noted that the interstate was dangerously busy on the day in question. Finally, in *Crocker v. State*, 989 N.E.2d 812, 819-20 (Ind. Ct. App. 2013), *trans. denied*, this Court addressed whether an officer's request for a motorist to sit in the patrol car violated the Fifth Amendment rather than the Fourth Amendment.

[22] Next, Barrientos argues that even if the detective acted lawfully in asking him to sit in the patrol car, Barrientos' consent to have his vehicle searched was invalid because the detective requested permission to search while they sat in the patrol car. Barrientos thus argues that he was coerced into consenting.

[23] Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Perry v. State*, 638 N.E.2d 1236, 1240 (Ind. 1994). A valid consent to search obviates the Fourth Amendment's warrant requirement. *Id.* The State bears the burden of demonstrating consent was freely and voluntarily given. *Navarro v. State*, 855 N.E.2d 671, 675 (Ind. 2006). A consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. *Id.*

[24] Voluntariness of a consent is a question of fact to be determined from the totality of the circumstances. *Id.* Some of the circumstances for consideration may include: (1) whether the defendant was advised of his or her Miranda rights prior to the request to search; (2) the defendant's degree of education and intelligence; (3) whether the defendant was advised of his or her right not to consent; (4) whether the defendant has previous encounters with law enforcement; (5) whether the officer made any express or implied claims of authority to search without consent; (6) whether the officer was engaged in any illegal action prior to the request; (7) whether the defendant was cooperative previously; and (8) whether the officer was deceptive as to his or her true identity or the purpose of the search. *Id.*

[25] In this case, Detective Villarreal neither Mirandized Barrientos nor told him he was free to refuse to consent. In addition, the record is silent as to Barrientos' level of education and whether he has encountered law enforcement in the past. These factors must be weighed against the many other factors that favor a finding of voluntariness. First, Detective Villarreal returned Barrientos' driver's

license and vehicle registration before asking for permission to search, so the detective was not holding onto the documents as a form of coercion. Second, although Barrientos was in the patrol car during the discussion, he was not handcuffed or otherwise restrained. To the contrary, Detective Villarreal told Barrientos that he was "all set," thus ending the stop, before requesting consent to search. Tr. p. 19. Third, Detective Villarreal was not engaged in illegal or deceptive activity when he requested permission to search, and he did not tell Barrientos that Barrientos was suspected of a crime. Fourth, Detective Villarreal did not claim any authority to search the car even if Barrientos refused to consent. *Cf. Campos v. State*, 885 N.E.2d 590, 600 (Ind. 2008) (motorist's consent to search his car was invalid because the officer had told the motorist that the search was "necessary," thereby indicating that there was no right to refuse).[1] Fifth, Barrientos had been cooperative throughout the traffic stop, immediately and unhesitatingly consented to the search, and repeated several times that he consented to the search. Sixth, Detective Villarreal conversed with Barrientos in a normal tone of voice and no other officers arrived on the scene until after Barrientos had consented, so the atmosphere was not unduly intimidating. *Cf. Thurman v. State*, 602 N.E.2d 548, 552 (Ind. Ct. App. 1992) (defendant's consent to search his car was the product of coercion where the defendant gave his consent while being forced to keep his

---

[1] It appears that Detective Villarreal was also involved in the *Campos* case. That case involved a traffic stop in Northwest Indiana, and its facts closely resemble this case except for the officer's crucial statement in *Campos* that the search was "necessary." Detective Villarreal did not make a similar statement in the current case.

hands on his car and was surrounded by five police officers), *trans. denied*. Seventh, the traffic stop was relatively brief in duration, as less than ten minutes elapsed between Officer Villarreal stopping Barrientos' vehicle and Barrientos consenting to a search. Defendant's Ex. 1. Based on the totality of the circumstances, we conclude that Barrientos' consent to search his vehicle was freely and voluntarily given, and the trial court did not abuse its discretion in denying Barrientos' motion to suppress on Fourth Amendment grounds.

## III. Article I, section 11

[26] Article I, section 11 of the Indiana Constitution provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." The text of article I, section 11 is nearly identical to that of the Fourth Amendment, but Indiana's courts interpret and apply section 11 independently from Fourth Amendment jurisprudence. *State v. Washington*, 898 N.E.2d 1200, 1205-06 (Ind. 2008).

[27] The purpose of section 11 is to protect those areas of life that Hoosiers consider private from unreasonable police activity. *Id.* at 1206. Under the Indiana Constitution, the legality of a governmental search or seizure turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Richard v. State*, 7 N.E.3d 347, 350 (Ind. Ct. App. 2014), *trans. denied*. Among other circumstances, we consider: (1) the degree of concern, suspicion or knowledge that a violation has occurred; (2) the degree of intrusion

the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). The State has the burden of proving that a search or seizure was reasonable under the totality of the circumstances. *Croom v. State*, 996 N.E.2d 436, 442 (Ind. Ct. App. 2013), *trans. denied*.

[28] Barrientos argues that Detective Villarreal acted unreasonably by requiring him to sit in the patrol car during the stop. The detective knew that violations had occurred because he had watched Barrientos speed and drive over the fog line. As a result, Detective Villarreal was justified in investigating Barrientos' documents and asking where Barrientos was going.

[29] Turning to the degree of intrusion into Barrientos' privacy, Barrientos was asked to step out of his car and sit in the patrol car. Furthermore, he was asked to lift his shirt while standing on the side of the road to show he did not have a gun. It appears that Detective Villarreal could have conducted the traffic stop just as effectively if Barrientos had remained in his own vehicle.

[30] On the other hand, Barrientos was not handcuffed. Further, the record demonstrates Detective Villarreal's interaction with Barrientos did not differ from what a reasonable person might expect during a routine traffic stop – reviewing the motorist's documents via computer, asking general questions about the motorist's destination, and issuing a verbal warning. The detective's tone of voice was level throughout the stop. In addition, the traffic stop was effectively over when Detective Villarreal asked for permission to search the

vehicle. Further, it appears Barrientos' sitting in the patrol car did not unreasonably extend the duration of the stop, because only ten minutes passed between when the stop began and when Barrientos agreed to the search.

[31] As for the extent of law enforcement needs, there were specific circumstances that led Detective Villarreal to have Barrientos sit in his patrol car. On the day and time in question, the highway was very busy, and Detective Villarreal prefers to minimize walking back and forth between cars as a safety measure. Also, Barrientos' vehicle had an Illinois temporary license plate, and the detective wanted Barrientos to be present as he searched for the plate on his computer in case any problems arose. Finally, as our Supreme Court has recognized, interstate drug trafficking is a significant issue facing law enforcement. "Given that [drug traffickers'] stock-in-trade is inherently fungible and highly mobile, but their centers of organization are scattered and secretive, law enforcement's best chance of uncovering the latter is to interdict the former as it moves about our nation's highways." *Austin*, 997 N.E.2d at 1036. Balancing the three factors, we conclude Detective Villarreal's decision to have Barrientos sit in the patrol car during the traffic stop was not unreasonable under the totality of the circumstances.

[32] Finally, Barrientos argues his consent to search his vehicle was invalid under article I, section 11 of the Indiana Constitution because he was in custody but was not advised that he had the right to refuse Detective Villarreal's request.

[33]    In *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634, 640 (1975), our Supreme Court determined that when a suspect is in custody, article I, section 11 of the Indiana Constitution requires that the suspect must be advised of, and explicitly waive, the right to counsel before giving a valid consent to a search. We determine whether a person is in custody for purposes of *Pirtle* by considering all circumstances surrounding the encounter and asking whether a reasonable person under the same circumstances would believe he or she was under arrest or not free to resist the entreaties of the police. *Meredith v. State*, 906 N.E.2d 867, 873 (Ind. 2009). Relevant circumstances include whether the defendant had been read his or her Miranda rights, was handcuffed or otherwise restrained in any way, was told he or she was a suspect in a crime, was subjected to vigorous interrogation, was told to cooperate, was told expressly or impliedly there would be adverse consequences for noncooperation, or was told he or she was not free to go. *Id.* at 874. The length of the detention is also a factor. *Id.* A person stopped by the police during a traffic stop is "seized" and momentarily not free to go but is ordinarily not considered to be in custody. *Id.* at 873.

[34]    Barrientos was restrained in a sense by being asked to sit in the patrol car during the stop, but he was not handcuffed or otherwise restricted. His discussion with Detective Villarreal was typical of a conventional traffic stop. Detective Villarreal spoke in a level voice throughout his conversation with Barrientos. At one point, the two men laughed because Detective Villarreal initially thought Barrientos' nephew was an adult rather than a fifteen-year-old. The

detective never told Barrientos he was under investigation, did not urge him to cooperate, and never threatened him with adverse consequences for noncooperation. To the contrary, Detective Villarreal ended the traffic stop by giving Barrientos a verbal warning and telling him, "You're all set," before requesting permission to search the vehicle. Tr. p. 19. Barrientos immediately consented to the detective's request, agreeing several times to the search. Finally, the stop did not last very long, no more than ten minutes until Barrientos consented to the search.

[35] Barrientos discusses several cases in support of his claim, but they are distinguishable. In *Friend v. State*, 858 N.E.2d 646, 651 (Ind. Ct. App. 2006), a panel of this Court determined the defendant was in custody, and should have been given *Pirtle* advisements, because he had been detained for forty-five minutes, was put in a patrol car and repeatedly told to stay there, and was handcuffed - circumstances that are not present in the current case. In *Miller v. State*, 846 N.E.2d 1077, 1081 (Ind. Ct. App. 2006), *trans. denied*, a panel of this Court deemed the defendant to be in custody, and entitled to *Pirtle* advisements, because he was removed from his car and handcuffed. By contrast, Barrientos was never handcuffed. Finally, in *Crocker*, 989 N.E.2d at 819, a panel of this Court deemed the defendant to have been in custody because, after an officer placed the defendant in a patrol vehicle, the officer immediately administered a sobriety test and also lied to the defendant, stating that he knew the defendant had marijuana. Neither of those circumstances was present in Barrientos' case.

[36] Under the circumstances of this case, Barrientos was not in custody and the detective was not obligated to give Barrientos *Pirtle* advisements while asking whether Barrientos would consent to a vehicle search. *See Meredith*, 906 N.E.2d at 874 (*Pirtle* advisements unnecessary where the record reveals "nothing more than a conventional traffic stop."). The trial court did not err by rejecting Barrientos' claim that his consent to the search was invalid pursuant to Indiana Constitution article I, section 11.

## Conclusion

[37] For the foregoing reasons, we affirm the judgment of the trial court.

[38] Affirmed.

Najam, J., and Barnes, J., concur.