



FILED

Oct 02 2024, 9:01 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Kelvin M. Bradford,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

October 2, 2024

Court of Appeals Case No.
24A-CR-54

Appeal from the LaPorte Circuit Court

The Honorable Thomas J. Alevizos, Judge

Trial Court Cause No.
46C01-2101-F2-38

---

**Opinion by Judge Mathias**
Judges Vaidik and Tavitas concur.

**Mathias, Judge.**

[1] Kelvin Bradford appeals his convictions for Level 3 felony possession of cocaine and Level 4 felony unlawful possession of a firearm by a serious violent felon. The evidence supporting his convictions was discovered during a warrantless vehicle search after a sheriff's deputy stopped Bradford for committing traffic infractions on Interstate 80. On appeal, Bradford challenges the constitutionality of the search under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. He also raises two challenges to his aggregate ten-year sentence: that the trial court abused its discretion when it failed to consider undue hardship on his family as a mitigating circumstance and that his sentence is inappropriate in light of the nature of the offenses and his character.

[2] We affirm.

## Facts and Procedural History

[3] On January 7, 2021, at approximately 11:30 a.m., Bradford was traveling eastbound in a rental car on Interstate 80 in LaPorte County. LaPorte County Sheriff's Deputy Wade Wallace initiated a traffic stop of Bradford's vehicle after Bradford committed three traffic infractions. Specifically, the deputy twice saw Bradford merge from one lane to another without signaling for at least 300 feet, and he paced Bradford travelling at seventy-eight miles per hour in a seventy-mile per hour zone.

[4] As he approached the front passenger window of the vehicle, the deputy observed that Bradford appeared to be nervous and was smoking a cigarette. Deputy Wallace smelled both cigarette smoke and the odor of marijuana. Bradford provided his Ohio driver's license and the vehicle's rental agreement. Bradford told the deputy that he was traveling from Illinois to Ohio. The rental agreement named Tadarow Bradford as the lessee, and the vehicle was due to be returned to Texas in mid-January. Because he smelled the odor of marijuana, Deputy Wallace decided to search Bradford's vehicle, but he did not do so immediately because he wanted to complete the infraction paperwork and wait for an assisting officer.

[5] Deputy Wallace asked Bradford "to sit in the front passenger seat of [his] patrol car while [he] completed [his] traffic enforcement." Tr. p. 129. The deputy issued two warning tickets to Bradford. The deputy also discovered that Bradford had a criminal history in Ohio. Without giving Bradford his *Miranda* warnings, the deputy asked Bradford questions and Bradford gave incriminating responses.[1] When the requested assisting officer arrived, Deputy Wallace removed Bradford from his patrol car and placed him in handcuffs. He also gave Bradford his *Miranda* warnings and told him that he was going to search the vehicle because he had smelled marijuana. *Id*. at 133.

---

[1] The trial court did not admit these statements into evidence.

[6] Deputy Wallace started his search by opening the rear hatch of the SUV. There, he found a grocery bag, and inside that bag he discovered a vacuum-sealed package containing multiple Ziploc bags with a white powdery substance later determined to be cocaine. The deputy also found a black leather travel bag. The travel bag contained a letter addressed to Bradford and a loaded handgun with a box of ammunition. Bradford told the officer that the handgun belonged to his "wife or girlfriend." *Id*. at 142. The deputy then searched the driver and passenger areas of the vehicle. He found a digital scale in the driver's side door compartment, and, in the center console, he found a jar containing what the deputy believed to be marijuana. Finally, the deputy observed what he believed to be particles of marijuana (or "shake") in the passenger door compartment. *Id*. at 146. During his transport to jail, Bradford told the deputy that he had "cocaine in his hoody." *Id*. at 150. Deputy Wallace discovered another Ziploc bag in the pocket of Bradford's sweatshirt that contained a white powdery substance later identified as 82.67 grams of cocaine.

[7] The State charged Bradford with Level 2 felony dealing in cocaine and Level 4 felony possession of a handgun by a serious violent felon. Bradford filed a motion to suppress his incriminating statements to Deputy Wallace and the evidence discovered during the traffic stop, arguing that the deputy's questioning and the search violated his federal and state constitutional rights. The trial court partially granted his motion and suppressed the incriminating statements that Bradford had made before Deputy Wallace gave him his *Miranda* warnings. However, the court denied his motion to suppress the

evidence found during the warrantless vehicle search and the search incident to arrest after concluding that the searches did not violate Bradford's rights under the Fourth Amendment and Article 1, Section 11.

[8] The trial court held Bradford's bench trial on October 30, 2022. Bradford renewed his objections to the admission of the evidence found during the vehicle search and the search incident to arrest. Consistent with its ruling on the motion to suppress, the trial court overruled his objections to the admission of that evidence. After considering the evidence and arguments presented, the trial court found Bradford guilty of the lesser-included offense of Level 3 felony possession of cocaine and Level 4 felony unlawful possession of a firearm by a serious violent felon.

[9] The trial court held Bradford's sentencing hearing on December 8. The State presented evidence that Bradford's prior criminal history consisted of convictions in Ohio for felony trafficking in cocaine, possession of marijuana, and domestic violence. On the date of the hearing, he also had a pending felony criminal charge in Texas. Bradford asked the court to consider that his imprisonment would cause undue hardship for his family. In support of his proposed mitigating circumstance, Bradford's wife testified that Bradford has always been employed fulltime, and that they have seven children in their household. *Id*. at 223-24.

[10] The trial court found Bradford's prior criminal history, and that he was out on bond when he allegedly committed a felony in Texas as aggravating

circumstances. The court did not find any mitigating circumstances. Concerning Bradford's proposed mitigating circumstance of undue hardship on his family, the court specifically found that Bradford had not presented any evidence to show that his imprisonment would be harder on his family than any other family in the same circumstances. *Id.* at 239. The court ordered Bradford to serve concurrent terms of ten years with six years executed in the Department of Correction, two years served in community corrections, and two years suspended to probation for his Level 3 felony possession of cocaine conviction and six years for his Level 4 felony unlawful possession of a handgun conviction.

[11] Bradford now appeals.

## The Vehicle Search

[12] Bradford argues that the warrantless vehicle search violated the Fourth Amendment and Article 1, Section 11, and, therefore, the trial court abused its discretion when it admitted into evidence the cocaine and the firearm discovered during the search. Bradford appeals following a completed trial; therefore, the appropriate standard of review is whether the trial court abused its discretion when it admitted the evidence obtained during the vehicle search. *See Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017) (citing *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014)). We will reverse rulings on admissibility of evidence only "when admission is clearly against the logic and effect of the facts and circumstances." *Id.* (citing *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997)). "However, when a challenge to such a ruling is predicated on the

constitutionality of the search or seizure of evidence, it raises a question of law that we review de novo." *Id.* (citing *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013)).

## 1. The Fourth Amendment

[13] The Fourth Amendment to the United States Constitution provides protection against unreasonable searches and seizures. The stop of a vehicle and detention of its occupant constitutes a seizure under the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention is brief. *Thayer v. State*, 904 N.E.2d 706 (Ind. Ct. App. 2009). If the detention exceeds its proper scope, any items seized must be excluded from evidence at trial as the fruit of the poisonous tree. *Id.* (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)).

[14] Traffic violations create probable cause for officers to stop a vehicle. *State v. Torres*, 159 N.E.3d 1018 (Ind. Ct. App. 2020) (quoting *State v. Quirk*, 842 N.E.2d 334 (Ind. 2006)). But when the purpose of the traffic stop is completed, the officer cannot continue to detain a motorist unless something occurred during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity was occurring. *Thayer*, 904 N.E.2d 706 (quoting *Hill*, 195 F.3d at 264).

[15] Although the Fourth Amendment generally prohibits warrantless searches, the automobile exception to the warrant requirement "allows police to search a vehicle without obtaining a warrant if they have probable cause to believe

evidence of a crime will be found there." *See Moore v. State*, 211 N.E.3d 574, 579 (Ind. Ct. App. 2023) (citing *State v. Hobbs*, 933 N.E.2d 1281 (Ind. 2010)). The "exception is based not only on ready mobility but also on the lesser expectation of privacy with respect to automobiles, so that even where an automobile is not immediately mobile, a warrantless search may still be justified." *Myers v. State*, 839 N.E.2d 1146, 1151 (Ind. 2005). "The automobile exception allows law enforcement to search not only the vehicle itself but also any containers inside it that may contain evidence." *Wertz v. State*, 41 N.E.3d 276, 280 (Ind. Ct. App. 2015) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)).

[16] In his brief, Bradford observes that Illinois, Michigan, and Ohio have legalized marijuana, and a motorist "traveling from a bordering state may emanate the odor of marijuana that was legally used or possessed." Appellant's Br. at 13-14. Bradford notes that his driver's license was issued by the State of Ohio, and he informed Deputy Wallace that he was traveling from Illinois to Ohio. He claims that "[u]nder the circumstances, '[t]he odor of burnt marijuana in a vehicle does not necessarily indicate illegal activity by a current occupant.'" *Id.* at 14 (quoting *Miller v. State*, 991 N.E.2d 1025, 1030 (Ind. Ct. App. 2013), *trans. denied*).

[17] Our courts have previously held that the smell of marijuana emanating from a motorist's window provides a trained officer with probable cause to justify a vehicle search. *See, e.g.*, *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013); *Moore, 211 N.E.3d at 581*. Bradford attempts to distinguish those holdings by relying

on *Miller*. In that case, the officer initiated a traffic stop because Miller's license plate was expired. Miller exited his car during the stop and refused to stay in the vehicle. The officer placed him in handcuffs outside of the vehicle. During an ensuing pat-down search, the officer smelled "burnt marijuana on Miller's clothes." *Miller*, 991 N.E.2d at 1026-27. When asked, Miller told the officer that he did not smoke marijuana. He also told the officer that he had no weapons that the officer "needed to know of." *Id.* at 1027 (record citation omitted).

[18] The officers decided to tow Miller's car because of the expired license plate and an inventory search was performed. Miller was released from handcuffs and told he was free to leave. Miller asked the officer for his cell phone and backpack that were inside his vehicle. The officer retrieved the backpack and began to search it for weapons before giving it to Miller. Inside, the officer found a container with marijuana residue and a smoking device that smelled like burnt marijuana. The State charged Miller with possession of paraphernalia, and Miller filed a motion to suppress the evidence discovered in his backpack. The trial court denied the motion and we accepted interlocutory appeal. *Id.*

[19] We reversed the trial court and concluded that the backpack search violated the Fourth Amendment. We rejected the State's argument that the backpack search was permissible under the automobile exception to the warrant requirement. Although the officer smelled burnt marijuana emanating from Miller's clothing during the pat-down search, we observed:

We have recognized that the odor of marijuana on a person's breath and emanating from inside a vehicle may give rise to probable cause that a person possesses marijuana. *Edmond v. State*, 951 N.E.2d 585, 590-91 (Ind. Ct. App. 2011). At the same time, "[b]ecause the odor of burnt marijuana might linger in a vehicle for a period of time, that odor does not necessarily indicate illegal activity by a current occupant." *Id*. at 591. **Here, there is no evidence that the odor of marijuana emanated from the vehicle.** Following Miller's request, Officer Hasler entered Miller's vehicle to retrieve the backpack yet he did not testify that the vehicle smelled of marijuana. To the extent that the State argues that Miller's prior actions supplied probable cause, we again conclude that these circumstances are too attenuated given that Officer Hasler's patdown found no marijuana and Miller was told that he was free to leave. Because we conclude that Officer Hasler provided no facts and circumstances that would lead a reasonably prudent person to believe that a search would uncover evidence of a crime, probable cause to search Miller's backpack did not exist. As a result, the automobile exception to the Fourth Amendment cannot be applied to uphold the search.

*Id.* at 1030-31 (emphasis added).

[20]   In this case, Deputy Wallace testified that he had specialized training in detecting the odor of marijuana. Tr. p. 123. The deputy testified that he approached Bradford's vehicle from the passenger side and spoke to him through the passenger side window. *Id.* at 126. He stated that Bradford seemed nervous, and that he "noted the odor of marijuana emitting from the interior of the vehicle." *Id*. at 127. At that time, Deputy Wallace decided to search Bradford's vehicle. *Id*. Accordingly, *Miller* is inapposite here.

Without citation to authority, Bradford also claims that Deputy Wallace should have confirmed that the odor of marijuana still lingered in the vehicle before searching it. But it was enough that Deputy Wallace smelled marijuana emanating from the vehicle when he began the traffic stop. We acknowledge Bradford's argument concerning the legality of marijuana in our neighboring states and that the smell of marijuana can linger. But possession of marijuana is still illegal in Indiana, and when the trained officer smelled the odor of it in Bradford's vehicle, the officer had probable cause to believe that he would find marijuana in the vehicle. *See Edmond*, 951 N.E.2d at 590-91. For these reasons, the warrantless vehicle search did not violate the Fourth Amendment.

## 2. Article 1, Section 11

Bradford also argues the vehicle search violated Article 1, Section 11 of the Indiana Constitution. Although the text of Section 11 mirrors the Fourth Amendment, we interpret it separately and independently. *See Robinson v. State,* 5 N.E.3d 362, 368 (Ind. 2014).

> When a defendant raises a Section 11 claim, the State must show the police conduct "was reasonable under the totality of the circumstances." [*State v. Washington*, 898 N.E.2d 1200, 1205-06 (Ind. 2008).] We consider three factors when evaluating reasonableness: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

*Id.*

[23]    Bradford asserts that Deputy Wallace's suspicion that he would find marijuana in the vehicle was "marginal" because the deputy noted that the odor lingered on Bradford's person when he removed him from the vehicle but did not "confirm that the odor remained in the vehicle" before searching it. Appellant's Br. at 16. Bradford again observes that marijuana is legal in Illinois, the state from which he was traveling.

[24]    Deputy Wallace had a significant degree of concern or suspicion that marijuana would be found in the vehicle when he decided to search it. As we noted in *Moore*, "[a]lthough the legal landscape for cannabis-derived substances is ever-changing, one thing remains true: some types of marijuana possession remain illegal in Indiana. It follows then that the odor of marijuana reasonably may indicate criminal activity."[2] 211 N.E.3d at 582. The deputy smelled marijuana from the passenger side window when he began speaking to Bradford and he noted that Bradford seemed nervous. For those reasons, we do not agree with Bradford's argument that the deputy's degree of suspicion was marginal.

[25]    Bradford argues that the degree of intrusion was high because Deputy Wallace did not confirm that the odor of marijuana was still emanating from the vehicle before he executed the search. Appellant's Br. at 17. We disagree. The deputy legally stopped Bradford for committing traffic infractions. He requested an assisting officer while he was issuing the traffic citations, and Deputy Wallace

---

[2] In *Moore*, our court disagreed with the defendant's argument that hemp and marijuana emit a similar odor, and therefore, the odor of marijuana does not indicate criminal activity. 211 N.E.3d at 582.

began the vehicle search after the assisting officer arrived. Bradford does not claim that the traffic stop was unreasonably delayed because Deputy Wallace decided to search his vehicle. *Cf. Moore*, 211 N.E.3d at 583 (observing that the "degree of police intrusion on Moore's ordinary activities was slight as [the officer] initially stopped Moore due to" an expired plate that was registered to a different vehicle). And we cannot conclude that the degree of intrusion was high because the deputy did not confirm a lingering odor of marijuana before searching the vehicle.

[26] Finally, Bradford contends that the extent of law enforcement needs weighs against a finding that the search was reasonable because Deputy Wallace did not deploy the canine to confirm the presence of drugs before searching the vehicle. Appellant's Br. at 17. However, as the State observes, there is nothing in the record establishing that a canine was available. And Deputy Wallace's vehicle search was consistent with the law enforcement officer's responsibility to deter crime and apprehend perpetrators of criminal activity. *See Moore*, 211 N.E.3d at 583 (citing *Washington*, 898 N.E.2d 1206 (Ind. 2008)).

[27] Under the totality of these circumstances, we conclude that the warrantless vehicle search was reasonable, and therefore, the search did not violate Bradford's rights under Article 1, Section 11.

### 3. The Evidence was Properly Admitted

[28] Bradford has not convinced us that his Fourth Amendment rights and Article 1, Section 11 rights were violated when Deputy Wallace searched his vehicle

without a warrant. We therefore conclude that the trial court did not abuse its discretion when it admitted into evidence the contraband seized during the warrantless vehicle search.

## Sentencing

[29] Next, Bradford challenges his sentence in two respects. First, he claims that the trial court abused its discretion when it declined to consider as a mitigating circumstance that incarceration would cause undue hardship to his family. Bradford also argues that his aggregate ten-year sentence is inappropriate in light of the nature of his offenses and his character.

### 1. Mitigating Circumstance

[30] "[T]he trial court must enter a [sentencing] statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2008). We review the sentence for an abuse of discretion, which occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Id.* A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentence–including a finding of aggravating and mitigating factors if any–but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-91. The relative weight or value

assigned to reasons properly found, or to those which should have been found, is not subject to review for abuse of discretion. *Id.*

[31] Hardship to a defendant's dependents due to incarceration is not automatically a mitigating factor because incarceration will always be a hardship on dependents. *McElroy v. State*, 865 N.E.2d 584, 592 (Ind. 2007). Many persons convicted of crimes have dependents and, in the absence of special circumstances showing an excessive undue hardship, a trial court does not abuse its discretion by failing to consider [hardship to dependents] as a mitigating circumstance. *Benefield v. State*, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009), *trans. denied*.

[32] Here, during the sentencing hearing, the trial court considered Bradford's proposed mitigator but explained its reason for rejecting undue hardship as a mitigating circumstance. And Bradford did not present any evidence of special circumstances but only that his family would suffer a financial loss and loss of parental support. We therefore conclude that the trial court did not abuse its discretion when it failed to consider Bradford's proposed mitigating circumstance.

## 2. Inappropriate Sentence

[33] Under Indiana Appellate Rule 7(B), we may modify a sentence that we find is "inappropriate in light of the nature of the offense and the character of the offender." Making this determination "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad

other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Sentence modification under Rule 7(B), however, is reserved for "a rare and exceptional case." *Livingston v. State*, 113 N.E.3d 611, 612 (Ind. 2018) (per curiam). Bradford bears the burden to show that his sentence is inappropriate. *Anglemyer*, 868 N.E.2d at 490.

[34] When conducting this review, we generally defer to the sentence imposed by the trial court. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Our role is to "leaven the outliers," not to achieve what may be perceived as the "correct" result. *Id.* Thus, deference to the trial court's sentence will prevail unless the defendant persuades us the sentence is inappropriate by producing compelling evidence portraying in a positive light the nature of the offense—such as showing restraint or a lack of brutality—and the defendant's character—such as showing substantial virtuous traits or persistent examples of positive attributes. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018); *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[35] Bradford was convicted of Level 3 felony possession of cocaine, and the sentencing range for this offense is three to sixteen years, with the advisory sentence being nine years. *See* Ind. Code § 35-50-2-5(b). His ten-year sentence is one year greater than the advisory, but the trial court ordered him to serve six years in the Department of Correction and two years in community corrections, with the remaining two years suspended to probation. The trial court imposed the advisory six-year sentence for Bradford's Level 4 felony possession of a

handgun by a serious violent felon conviction. *See* Ind. Code § 35-50-2-5.5. The trial court ordered the sentences to be served concurrent to each other.

[36] Bradford claims that there is nothing about the nature of his offenses that warrants a sentence above the advisory, but he did not present any compelling evidence that would portray his offenses in a positive light. And he possessed cocaine in an amount that far exceeded the minimum amount needed to prove the elements of the crime.

[37] Concerning his character, Bradford directs our attention to letters and testimony from individuals vouching for his good character. It is laudable that Bradford has support from family and friends. But he also has two prior felony convictions in Ohio for trafficking cocaine. Although those offenses were committed over twenty years before Bradford committed this offense, while this case was pending, Bradford was charged with a "3rd Degree Felony" in Texas. Appellant's App. p. 91. The trial court appropriately considered evidence of Bradford's positive character traits against Bradford's prior and recent criminal activity when imposing his sentence. And this is reflected in the court's decision to order Bradford to serve six years executed in the Department of Correction and then serve two years in community corrections, with the remaining two years suspended to probation.

[38] For all of these reasons, we conclude that Bradford has not met his burden of persuading us that his sentence is inappropriate in light of the nature of his offenses and his character.

## Conclusion

[39] Bradford has not established that the warrantless vehicle search violated the Fourth Amendment or Article 1, Section 11, and therefore, the trial court did not abuse its discretion when it admitted into evidence the cocaine and handgun found during that search. Bradford has also not convinced us that his ten-year aggregate sentence is inappropriate in light of the nature of his offenses and his character. We therefore affirm his convictions and sentence.

[40] Affirmed.

Vaidik, J., and Tavitas, J., concur.

ATTORNEY FOR APPELLANT

Jessica R. Merino
Wyatt, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Daylon L. Welliver
Deputy Attorney General
Indianapolis, Indiana